# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOHN PUGNO and AILENE PUGNO,

      Plaintiffs-Appellees,

v

BLUE HARVEST FARMS LLC,

      Defendant-Appellant.

FOR PUBLICATION
September 27, 2018
9:00 a.m.

No. 340142
Ottawa Circuit Court
LC No. 16-004624-NO

---

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

CAMERON, J.

In this negligence case, a jury awarded a total judgment of $358,288.98 in favor of plaintiffs, John and Ailene Pugno.[1] Defendant, Blue Harvest Farms, LLC, appeals the trial court's order denying its motion for a new trial, judgment notwithstanding the verdict (JNOV), and remittitur. On appeal, Blue Harvest raises multiple allegations of error originating from the trial court's denial of Blue Harvest's motion for summary disposition under MCR 2.116(C)(10) and from its motion for a new trial, JNOV, and remittitur. We conclude that the trial court erred when it allowed plaintiff to proceed to trial on both a premises liability and ordinary negligence theory. However, it was permissible to proceed on the premises liability theory, the jury instructions on res ipsa loquitur and spoliation as to premises liability were proper, and it was appropriate for the jury to find Blue Harvest liable on the premises liability claim. Therefore, a new trial is not merited. In all other respects, we affirm.

I.

Plaintiff was employed by Air Components as an air-compressor technician and salesperson. Blue Harvest is a family-owned blueberry farm and packaging facility located in West Olive, Michigan. On October 28, 2014, plaintiff met with Blue Harvest's owner, Adam LaLone, to inspect a malfunctioning air compressor on Blue Harvest's premises. As plaintiff and LaLone walked through the warehouse where packaging materials were stored, they passed a stack of three pallets of unassembled cardboard boxes near the walkway. The top two bundles

---

[1] This case arises out of injuries suffered by John. Ailene's claims were based on loss of consortium. As a result, we will refer to John as "plaintiff."

unexpectedly fell on them. Plaintiff suffered multiple injuries, including a broken hip that required emergency hip replacement surgery.

Blue Harvest did not preserve the pallets or cardboard boxes that fell, nor were there any photographs taken. According to LaLone, each pallet of stacked cardboard was four feet long and four feet high. Each stack of cardboard was bound to a wooden pallet with nylon straps and was delivered to Blue Harvest by an outside vendor. A week before the incident, LaLone used a forklift to move the bounded pallets of cardboard in the warehouse and stacked them three bundles high. Together, the tower of cardboard weighed 1,000 pounds and reached a height of 14 feet. LaLone testified at his deposition that stacking cardboard in this manner was normal in the industry. He had worked on farms that had used that method of storage for 50 years without incident. Importantly, he admitted that if the cardboard was properly stacked, it should not "go anywhere," but he did not know what happened to cause the cardboard to fall. After the incident, LaLone noted that one of the pallets that fell was cracked. However, he was unsure whether the crack was on the back side or the front side of the pallet because "[e]verything was flipped over." LaLone opined that the incident may have been caused by a damaged pallet; however, there was no indication whether the pallet was cracked before the incident because the cardboard obscured the view of the pallet. Unfortunately, LaLone used the remaining undamaged boxes after the incident and threw away the cracked pallet before plaintiff could inspect it.

II.

Plaintiff filed a two-count complaint against Blue Harvest on June 20, 2016, alleging negligence and loss of consortium. Blue Harvest filed a motion for summary disposition under MCR 2.116(C)(10), arguing that the lawsuit sounded in premises liability, and because plaintiff failed to show that Blue Harvest had actual or constructive knowledge of the alleged hazardous condition, summary disposition was appropriate. The trial court entered an order denying Blue Harvest's motion for summary disposition without the benefit of oral argument, holding that plaintiff's complaint sounded only in ordinary negligence and that "defendant's motion argues against a legal theory which has not been pled." Blue Harvest filed a motion for reconsideration, arguing that the trial court committed palpable error because plaintiff's claim was based exclusively on premises liability—not ordinary negligence. The trial court denied Blue Harvest's motion, citing its earlier order denying the motion for summary disposition.

At a later proceeding, plaintiff's attorney surprised the court when he informed it that plaintiff was pursuing his negligence claim on both a premises liability and ordinary negligence theory. The trial court decided to rehear Blue Harvest's request for summary disposition on plaintiff's premises liability claim. At the hearing, Blue Harvest argued that summary disposition was proper because there was no genuine issue of material fact that Blue Harvest did not have actual or constructive notice of the hazardous condition. Blue Harvest further argued that there was no evidence of negligence at all because plaintiff presented no evidence explaining why the pallet fell, e.g., LaLone stacking the pallets improperly, a pallet cracking under the weight of the cardboard, or the vibrations of forklift activity nearby causing the pallets to shift off balance. Plaintiff's attorney pointed to the theory of res ipsa loquitur, explaining that such an instruction was needed for the very reason that there was no evidence as to why the pallets fell. Plaintiff's attorney also addressed that he was alleging two separate negligence theories:

[*Plaintiff's Attorney*]: But in terms of the premises liability claim, we have to separate conduct, which is negligence, from what is your duty as a landowner? And we cited the law that says you can have both claims. We have the conduct. [LaLone] clearly stacked it. There's no dispute on that.

*The Court*: Why have you made your complaint so, I guess, simple yet complicated because you're alleging a couple theories on a simple complaint.

*Plaintiff's Attorney*: I –

*The Court*: This is difficult.

*Plaintiff's Attorney*: And I can tell you why. Because we didn't even know. Because we knew it fell over. We didn't know about the cracked pallets. My client was in the hospital when all this was cleaned up. So, we're coming in saying we know something happened here, something went wrong, and now I need to discover it. . . .

*The Court*: What you need to do is to file an amended complaint putting forth your theories, and then once we get that, we'll determine if they're prepared to go to trial on your amended complaint or not.

Plaintiff's attorney filed an amended complaint a few days later, alleging premises liability and ordinary negligence. Blue Harvest did not file another motion for summary disposition,[2] and the trial court never addressed whether plaintiff could continue on both negligence theories. Before trial, Blue Harvest filed an emergency motion for an adjournment, claiming plaintiff was no longer calling his treating medical doctor to testify, and therefore, it needed time to subpoena and depose him. The trial court denied the motion, concluding Blue Harvest failed to file any witness list, and therefore, it would not be prejudiced by the fact that the doctor was not going to testify at trial. Trial commenced on June 14, 2017. Before closing arguments, the trial court overruled Blue Harvest's objections to plaintiff's request for res ipsa loquitur and spoliation jury instructions. The trial court also denied Blue Harvest's request for two other specific jury instructions. The jury returned a verdict finding Blue Harvest liable on both negligence theories. Blue Harvest then filed a motion for a new trial, JNOV, and remittitur, claiming the trial court failed to grant its emergency motion for an adjournment, that it erred when it allowed the res ipsa loquitur and spoliation instructions, and when it denied Blue Harvest's request for specific jury instructions, and that remittitur was necessary because the jury failed to account for the fact that plaintiff was cleared to go back to work.

---

[2] According to the scheduling order, motions for summary disposition had to be filed within 28 days of trial. Plaintiff's amended complaint was filed on May 23, 2017—21 days before trial was scheduled to begin on June 14, 2017. Therefore, it is uncertain whether defendant could have filed a motion for summary disposition absent a trial adjournment.

III.

Blue Harvest first argues that the trial court erred in denying its motion for summary disposition because plaintiff's claim sounded exclusively in premises liability, there was no genuine issue of material fact for a jury to decide the premises liability issue, and the trial court should not have allowed the claim to proceed on the basis of res ipsa loquitur because the doctrine is inapplicable to premises liability claims. While we agree that plaintiff's claim sounded exclusively in premises liability, we are unpersuaded by Blue Harvest's remaining arguments.

A.

An issue is preserved for appellate review when it is raised in and decided by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). In this case, Blue Harvest filed a motion for summary disposition under MCR 2.116(C)(10) arguing that plaintiff's claim was based on premises liability and that plaintiff failed to produce any evidence that Blue Harvest was negligent. The trial court denied Blue Harvest's motion as it pertained to premises liability, concluding that Blue Harvest was not entitled to summary disposition for an apparent lack of actual or constructive notice because LaLone created the hazardous condition and notice was imputed to Blue Harvest. Therefore, Blue Harvest's argument that it is entitled to summary disposition in relation to plaintiff's premises liability claim is preserved. However, it is less clear whether Blue Harvest has preserved its argument that plaintiff's ordinary negligence theory should have been summarily dismissed. While Blue Harvest alleged in its motion for summary disposition that plaintiff's claim sounds in premises liability, it did not argue in its brief or at the hearing that the ordinary negligence claim should be dismissed because plaintiff's lawsuit sounds *exclusively* in premises liability. On the other hand, Blue Harvest did raise this argument in its motion for reconsideration, and the trial court denied the motion without holding a hearing. Regardless, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). We choose to do so here because this is an issue involving a question of law for which all relevant facts are part of the record. See *id*.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court "must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the party opposing the motion." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). This Court's "task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Id*. A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 609; 566 NW2d 571 (1997) (citation omitted). However, the court may not "assess credibility" or "determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

B.

There is no dispute that plaintiff was an invitee at Blue Harvest's warehouse. See *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000) (stating "that invitee status is commonly afforded to persons entering upon the property of another for business purposes"). "In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "A premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (quotation and citation omitted). In addition, the plaintiff "must be able to prove that the premises possessor had actual or constructive notice of the dangerous condition at issue." *Id*. (citation omitted).

Blue Harvest argues persuasively that the trial court erred when it allowed plaintiff's claim to proceed on both premises liability and ordinary negligence. "Courts are not bound by the labels that parties attach to their claims." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691; 822 NW2d 254 (2012). Instead, an action should be determined by reading the entire complaint, looking beyond procedural labels, and determining the exact nature of the claim. *Id*. at 691-692. Importantly, there is a distinction "between claims arising from ordinary negligence and claims premised on a condition of the land." *Id*. at 692. When the claim is based on a condition of the premises, "liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Id*.; see also *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913, 914; 781 NW2d 806 (2010) ("[T]he plaintiff in this case is alleging injury by a condition of the land, and as such, his claim sounds exclusively in premises liability.").

Much of the confusion in this case stemmed from plaintiff's original complaint, which alleged a single claim of "negligence." Even plaintiff's amended complaint, which alleged both negligence theories, listed similar allegations under each count. On review of the original and amended complaints, it is clear that the duties alleged sound exclusively in premises liability. In the original complaint, plaintiff claimed that Blue Harvest, as the owner of the premises, owed him the "highest level of protection," to warn of any dangers it should have known about, to make the premises safe for plaintiff, to maintain the premises in a safe manner, and to ensure that plaintiff utilized methods to store pallets safely to protect from falling objects. According to plaintiff, Blue Harvest breached its duty by failing to properly stack the pallets and boxes, failing to warn of the dangers associated with the pallets and boxes, failing to make the premises safe, failing to inspect and maintain the premises to ensure that heavy boxes would not fall, and failing to otherwise protect plaintiff. In the amended complaint filed weeks before trial, plaintiff included both negligence theories. Under the count for ordinary negligence, plaintiff alleged that Blue Harvest failed to properly stack the pallets and keep them from falling, failed to ensure the stack would not fall over, and stacked the pallets to an unsafe height using defective pallets. All of plaintiff's allegations focus on the hazardous condition, Blue Harvest's duty to protect plaintiff from the hazardous condition, or how Blue Harvest created the condition. These allegations relate to the condition of the premises, i.e., the stack of pallets, and the complaint sounds in premises liability only. Therefore, we conclude that the trial court erred when it allowed plaintiff to proceed to trial on both theories.

That is not to say a plaintiff can never proceed on both negligence theories. However, in this case, plaintiff has not pleaded, nor do the facts support, conduct that would maintain an ordinary negligence theory. This Court has stated:

> In a negligence case, the theory of liability determines the nature of the duty owed. . . . In a premises liability claim, liability emanates merely from the defendant's duty as an owner, possessor, or occupier of land. However, that does not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct, as in this case. [*Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005) (opinion by NEFF, J.).]

In *Laier*, this Court reversed the trial court's grant of summary disposition and remanded for further proceedings. *Id*. at 500-501. Judge Neff, authoring the lead opinion, concluded that the plaintiff had alleged both a premises liability claim and an ordinary negligence claim, stating that "[d]efendant's *conduct* was . . . an alleged basis of liability, independent of premises liability." *Id*. at 493. The plaintiff's decedent in *Laier* died after he was crushed by the front-end loader bucket of the defendant's tractor when he and the defendant attempted to fix a hydraulic hose. *Id*. at 485-486. The plaintiff alleged that the defendant was negligent in the operation and control of the tractor and bucket. *Id*. at 486. Judge Neff also determined that the defendant failed to secure the bucket of the tractor in a raised position just before the decedent stepped under the bucket to work on the hose. *Id*. at 495. Accordingly, the defendant's duty to operate the tractor in a safe manner constituted conduct sufficient to maintain an ordinary negligence claim, and the defendant's duty to protect decedent from unreasonable risks of injury and to warn of those risks as it pertained to the tractor as a condition of the premises was sufficient to maintain a premises liability claim. *Id*. at 495, 497. The concurring judges, in two separate opinions, came to the conclusion that more factual development was needed to determine whether an ordinary negligence claim was viable. *Id*. at 501-503 (SCHUETTE, J., concurring in the result only; HOEKSTRA, P.J., concurring in part and dissenting in part).[3]

In this case, plaintiff does not allege an ordinary negligence claim that is "grounded on an independent theory of liability based on the defendant's conduct." *Id*. at 493. Instead, plaintiff only alleges that Blue Harvest, a week before the incident, created the dangerous condition, i.e., the stacked pallets, and failed to maintain them in a safe manner. An action sounds in premises liability rather than ordinary negligence "even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis*, 296 Mich App at 692. There is no allegation that LaLone or one of Blue Harvest's employees actively knocked the pallets over or engaged in direct conduct that caused the pallets to fall onto plaintiff. LaLone was not actively stacking the pallets when they fell. The pallets were stacked in that manner

---

[3] Notably, Judge Hoekstra would have further concluded that summary disposition was proper on the premises liability claim because the tractor presented no danger until the defendant lifted the bucket. *Laier*, 266 Mich App at 503 (HOEKSTRA, P.J., concurring in part and dissenting in part). Additionally, the defendant was in no better position to protect the plaintiff's decedent from the dangerous condition than the decedent himself. *Id*. at 504.

-6-

nearly a week earlier and were simply a condition of the premises. Claims that Blue Harvest failed to protect and warn plaintiff of the unreasonable risks of injury sound squarely in premises liability. Because plaintiff did not plead sufficient allegations supporting ordinary negligence, the trial court erred when it allowed plaintiff to proceed on that theory.

Blue Harvest, however, would only be entitled to a new trial if refusal to set aside the verdict is inconsistent with substantial justice. MCR 2.613(A); *Guerrero v Smith*, 280 Mich App 647, 655-656; 761 NW2d 723 (2008). If the trial court did not err by allowing plaintiff to proceed on the premises liability theory, and the jury received the proper jury instructions regarding that claim, then any error involving the ordinary negligence claim does not affect the integrity of the jury's verdict and would be harmless. MCR 2.613(A).

C.

Thus, we must next determine whether plaintiff's premises liability claim survives summary disposition. Upon review of the record, we conclude that the trial court did not err when it denied Blue Harvest's motion for summary disposition on plaintiff's premises liability claim. Blue Harvest argues that it is entitled to summary disposition because there was no evidence that the pallets were stacked improperly and that no one knows why the stack of pallets fell over. Thus, even when viewing the evidence in the light most favorable to plaintiff, no jury could find Blue Harvest liable. This argument fails.

As stated previously, a premises owner has a duty "to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo*, 464 Mich at 516. The premises owner breaches this duty "when it knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey*, 500 Mich at 8. (quotation marks and citation omitted.) Plaintiff provided photographic evidence that Blue Harvest's storage practices included stacking pallets three or four high. Blue Harvest's owner, LaLone, admitted in his deposition that properly stacked pallets would not fall—implying pallets that fall could be improperly stacked. There was evidence that LaLone led plaintiff in close proximity of the pallets as they walked through the warehouse. And importantly, Blue Harvest failed to preserve the pallets of cardboard that had fallen. As provided in more detail below, plaintiff was entitled to an inference in his favor due to the spoliation of evidence. Thus, considering the evidence in the light most favorable to the non-moving party, plaintiff presented sufficient evidence, albeit circumstantial, to prove that Blue Harvest failed to protect and warn plaintiff from an unreasonable risk of harm on the premises. On the other hand, LaLone claimed that the incident was simply an accident likely caused by a cracked pallet, and Blue Harvest was in no way negligent. Thus, whether defendant breached its duty as a landowner is a question for the jury to decide. *Bertrand v Alan Ford Inc*, 449 Mich 606, 617; 537 NW2d 185 (1995) ("If the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide."). There are genuine issues of material facts as to whether Blue Harvest breached its duty of care as the premises possessor, and summary disposition is not appropriate on this issue.

A defendant can also "establish its entitlement to summary disposition by demonstrating that plaintiff failed to present sufficient evidence of notice." *Lowrey*, 500 Mich App at 10. To

do so, a plaintiff must "prove that the premises possessor had actual or constructive notice of the dangerous condition at issue." *Id*. at 8. However, "there is a difference between the failure to discover a dangerous condition created by another, and the creation of a dangerous condition by the possessor." *Pippin v Atallah*, 245 Mich App 136, 145 n 2; 626 NW2d 911 (2001). "Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor, but where the condition is created by a third person, there is a factual question regarding whether the possessor should have reasonably discovered the condition." *Id*.; see also *Williams v Borman's Foods, Inc*, 191 Mich App 320, 321; 477 NW2d 425 (1991) (concluding that notice is unnecessary when the defendant's agents created the condition). In this case, plaintiff and Blue Harvest both admit that LaLone created the dangerous condition at issue—the stack of pallets. Therefore, Blue Harvest's claim that it did not have notice of the condition fails because knowledge of the condition is imputed to the possessor.

IV.

Next, Blue Harvest argues that the trial court erred when it allowed the res ipsa loquitur jury instruction on a premises liability theory of negligence. We disagree. The issue of whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law. *Jones v Porretta*, 428 Mich 132, 154 n 8; 405 NW2d 863 (1987).

"The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act. . . ." *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005) (citation omitted; ellipsis in original). It is not an independent cause of action. Our Supreme Court has provided the following standard:

> In order to avail themselves of the doctrine of res ipsa loquitur, plaintiffs must meet the following conditions:
>
> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence;
>
> (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;
>
> (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and
>
> (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Id*. (quotation marks, citations, and alterations omitted)].

Although plaintiff must establish that the event was of a kind that ordinarily does not occur in the absence of negligence, plaintiff must also produce some evidence of wrongdoing beyond the mere happening of the event. *Fuller v Wurzburg Dry Goods Co*, 192 Mich 447, 448; 158 NW2d 1026 (1916).

The trial court provided the following jury instruction at the close of trial:

> If you find that the defendant had control over the instrumentality which caused the plaintiff's injuries and the event, the falling of the pallets, is of a kind which ordinarily does not occur in the absence of someone's negligence and the event, the falling of the pallets, was not due to any voluntary action or contribution on the part of the plaintiff and that the evidence of the true explanation of the event, the falling of the pallets, must be more readily accessible to the defendant than the plaintiff, then you may infer that the defendant was negligent.

First and foremost, whether the doctrine of res ipsa loquitur can apply in a premises liability case is a question that has yet to be fully resolved. Blue Harvest argues that this Court should not adopt the doctrine in this state, citing Alabama law, see *Ex parte Harold L Martin Distrib Co, Inc*, 769 So 2d 313, 314 (Ala, 2000), and arguing our courts have predominantly applied res ipsa loquitur in the context of medical malpractice claims.[4] We decline to adopt Blue Harvest's approach. Our Supreme Court has relied on the Restatement Torts, 2d to determine that res ipsa loquitur does not apply to cases involving gross negligence, see *Maiden v Rozwood*, 461 Mich 109, 127; 597 NW2d 817 (1999), citing Restatement Torts, 2d § 328D, comment on clause (c) of subsection (1), and we find the Restatement instructive. Importantly, the Restatement does not expressly preclude the use of a res ipsa loquitur theory with premises liability claims as it does for gross negligence claims. Instead, the Restatement provides examples when res ipsa loquitur applies to premises liability-type cases, such as when plaster unexpectedly falls from the ceiling, when a sign falls from a building, or when a chandelier falls from its fixture. *See id*. Ultimately, res ipsa loquitur is "merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." *Id*., comment *b*. Premises liability is a theory of negligence, and therefore, we conclude the doctrine of res ipsa loquitur may apply to such claims.

Turning to the first element of res ipsa loquitur, we must ask whether "the event is of a kind which ordinarily does not occur in the absence of negligence." *Woodard*, 473 Mich at 7. The Restatement Torts, 2d provides the following guidance on this element:

---

[4] We note that this Court has ruled on, albeit in a cursory manner, at least three cases that allowed the use of res ipsa loquitur in a premises liability case. See *Estate of Owens v Mantha Mgt Group*, unpublished per curiam opinion of the Court of Appeals, issued June 28, 2018 (Docket No. 338392); *Cooper-James v Texas Roadhouse of Roseville*, unpublished per curiam opinion of the Court of Appeals, issued November 30, 2010 (Docket No. 293797); *Boyer v Target Corp*, unpublished per curiam opinion of the Court of Appeals, issued March 15, 2005 (Docket No. 251790). The Sixth Circuit Court of Appeals, applying Michigan law, has also applied res ipsa loquitur to a premises liability claim. See *DeBusscher v Sam's East, Inc*, 505 F3d 475, 480-481 (CA 6, 2007).

*e. Permissible conclusion.* The plaintiff's burden of proof (see § 328A) requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so. [Restatement Torts, 2d, § 328D, Comment on Clause (a) of subsection (1).]

The evidence is clear that Blue Harvest's owner, LaLone, stacked the pallets of cardboard. Plaintiff and the trial court both rely on LaLone's testimony that a properly stacked pallet should not fall, leading to the reasonable inference that a falling pallet does so because it was improperly stacked. Moreover, the trial testimony is clear that Blue Harvest did not implement any safety precautions that could have prevented this type of accident. According to plaintiff's expert engineer who testified at trial,[5] the higher pallets are stacked, the more likely they could fall over and injure someone. In this case, plaintiff's expert concluded that Blue Harvest's storage procedures, including stacking cardboard pallets three high, fell below the industry standard. Most importantly, Blue Harvest failed to preserve the one piece of evidence— the wooden pallets—which could have provided an answer to the ultimate question of why the pallets fell. Given the spoliation instruction provided, the jury could reasonably determine, beyond mere speculation, that the improper stacking and storing of the pallets was the likely cause of the injury. Thus, in consideration of this evidence, a jury could conclude that the event here would not be something that occurs absent someone's negligence. That said, Blue Harvest has posited another viable theory—one that does not involve negligence at all. It claims that the pallets were properly stacked, but one pallet was cracked and therefore was the likely cause of the incident. We acknowledge this is a plausible theory. The pallet could have been compromised when it was delivered to the warehouse, at the time it was stacked, or the weight of the cardboard could have caused the defect in the pallet and shifted the stack off balance. However, when "the facts proved reasonably permit the conclusion that negligence is the more probable explanation," this decision must be left to the jury. *Id*. The trial court did not err, particularly due to the spoliation of evidence, when it allowed the jury to determine whether the falling pallets were an event that ordinarily does not happen in the absence of negligence.

---

[5] We note that plaintiff's expert only testified at trial, and his findings were not part of the record at the time of the hearing on defendant's motion for summary disposition under MCR 2.116(C)(10).

The last three elements of res ipsa loquitur are also established. The evidence shows that Blue Harvest was in exclusive control of the premises, that plaintiff was in no way responsible for the event, and Blue Harvest had ready access to any evidence of the true explanation of the event's happening. *Woodard*, 473 Mich at 7. Blue Harvest claims that the vendors also had control of the pallets, but LaLone testified that the pallets had been at the warehouse for almost a week before the event occurred. Therefore, this argument is without merit. Under the unique circumstances of this case, the trial court did not err when it provided the jury instruction on res ipsa loquitur.

V.

Next, as intimated earlier, we must determine whether the trial court's spoliation instruction was appropriate as a sanction because Blue Harvest disposed of the pallets and boxes that fell on plaintiff. We conclude that the spoliation instruction was proper.

The imposition of a sanction for spoliation of evidence "may be disturbed only upon a finding that there has been a clear abuse of discretion." *Brenner v Kolk*, 226 Mich App 149, 159-160; 573 NW2d 65 (1997). In addition, this Court reviews "the trial court's decision regarding supplemental jury instructions" for an abuse of discretion. *Guerrero*, 280 Mich App at 660. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 306 Mich App 203, 208; 854 NW2d 744 (2014).

An adverse inference permits the fact-finder to conclude that the missing evidence would have been adverse to the opposing party. *Brenner*, 226 Mich App at 155-156.

> A jury may draw an adverse inference against a party that has failed to produce evidence only when: (1) the evidence was under the party's control and could have been produced; (2) the party lacks a reasonable excuse for its failure to produce the evidence; and (3) the evidence is material, not merely cumulative, and not equally available to the other party. [*Ward v Consol Rail Corp*, 472 Mich 77, 85-86; 693 NW 366 (2005).]

In this case, the trial court provided M Civ JI 6.01(c) to the jury:

> The defendant in this case has not offered the pallets which fell on plaintiff as evidence. As this evidence was under the control of the defendant and could have been produced by the defendant, you may infer that the evidence would have been adverse to the defendant if you believe that no reasonable excuse for defendant's failure to produce the evidence has been shown.

Here, it was undisputed that Blue Harvest had control over the pallets that fell on plaintiff. They were located in Blue Harvest's warehouse. In addition, these items were relevant to this case. In fact, Blue Harvest's owner testified at trial that he believed that the incident was caused by failure of one of the pallets. Blue Harvest also argued that plaintiff's injuries were the result of an accident and that no one knew why the pallets fell.

"Even when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." *Brenner*, 226 Mich App at 162. Blue Harvest's failure to preserve the pallets deprived plaintiff of the opportunity to inspect a possible cause of the collapse. As a result, the trial court did not abuse its discretion by providing the spoliation instruction because it merely permitted the jury to infer that the evidence would have been adverse to Blue Harvest if it did not believe that Blue Harvest's excuse for disposing of the pallets was reasonable. See *id*. at 159-160. The trial court did not err when it provided the spoliation instruction to the jury.

Blue Harvest also contends that the trial court erred in not providing two supplemental instructions for the jury.

First, Blue Harvest asked the trial court to provide the following instruction: "the happening of an accident in and of itself is not evidence of negligence." The trial court declined to do so, stating that the res ipsa loquitur instruction already covered that information. The instruction provided that the jury could infer negligence on the part of Blue Harvest if it found that Blue Harvest had control over the pallets, if the falling of the pallets was the kind of event that does not ordinarily occur in the absence of someone's negligence, if the falling of the pallets was not due to any voluntary action on the part of plaintiff, and that the evidence of the true explanation of the event was more accessible to Blue Harvest than plaintiff. See *Woodard*, 473 Mich at 7. Thus, the jury had to find that the four elements of res ipsa loquitur were met before inferring negligence in this case. Accordingly, "the happening of an accident in and of itself is not evidence of negligence" was properly covered by the res ipsa loquitur instruction. See *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.") (Quotation marks and citation omitted.)

Finally, Blue Harvest requested the trial court to instruct the jury that "speculation and conjecture are insufficient to create an issue of material fact as to whether negligence can be proven." The trial court offered a similar preliminary instruction in regard to damages: "Which, if any, of these elements of damage have been proved, it is for you to decide based upon evidence and not upon speculation, guess, or conjecture." See M Civ JI 50.01. In addition, the trial court provided: "Your determination of the facts in this case must be based only upon the evidence admitted during the trial. Evidence consists of the sworn testimony of the witnesses. It also includes exhibits, which are documents or other things introduced into evidence." See M Civ JI 2.04(1). The trial court also provided M Civ JI 2.06(1), which provides:

> Because the law requires that cases be decided only on the evidence presented during the trial and only by the deliberating jurors, you must keep an open mind and not make a decision about anything in the case until after you have (a) heard all of the evidence, (b) heard the closing arguments of counsel, (c) received all of my instructions on the law and the verdict form, and (d) any alternate jurors have been excused. At that time, you will be sent to the jury room to decide the case. Sympathy must not influence your decision. Nor should your decision be influenced by prejudice regarding race, sex, religion, national origin, age, handicap, or any other factor irrelevant to the rights of the parties.

Based on the foregoing, the jury was properly instructed that its verdict must be based upon the evidence presented at trial. See *Zaremba Equip, Inc*, 302 Mich App at 25. As a result, the jury was properly instructed, and Blue Harvest is not entitled to a new trial. *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008). See also *Guerrero*, 280 Mich App at 665 ("Because the court's instructions properly covered the relevant areas, the trial court did not err by declining to give [the] plaintiff's second and third requested supplemental jury instructions.").

VI.

Next, Blue Harvest contends that it is entitled to a new trial because the trial court denied its emergency motion to adjourn right before trial to allow it to secure the testimony of plaintiff's primary care doctor. We disagree.

A trial court's ruling on a motion to adjourn is reviewed for an abuse of discretion. *Woodard*, 473 Mich at 12. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Ronnisch Constr Group, Inc*, 306 Mich App at 208.

"A motion for an adjournment must be based on good cause . . . ." *Zerillo v Dyksterhouse*, 191 Mich App 228, 230; 477 NW2d 117 (1991). Pursuant to MCR 2.503(C):

(1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

(3) If the testimony or the evidence would be admissible in the proceeding, and the adverse party stipulates in writing or on the record that it is to be considered as actually given in the proceeding, there may be no adjournment unless the court deems an adjournment necessary.

A trial court properly denies a motion for adjournment in cases that involve "some combination of numerous past continuances, failure of the movant to exercise due diligence, and lack of any injustice to the movant." *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991).

In this case, at the motion hearing regarding Blue Harvest's motion to adjourn trial, the trial court explained that Blue Harvest failed to prepare a witness list and did not indicate that it was relying on plaintiff's witness list. In addition, Blue Harvest had access to the doctor's medical records, and it could have subpoenaed the doctor to appear at trial. The trial court concluded that Blue Harvest could not claim prejudice for not having the opportunity to cross-examine a witness who was not testifying at trial (because plaintiff no longer planned to have him testify and Blue Harvest did not submit a witness list). Ultimately, the trial court determined that Blue Harvest created its own problem by not preparing a witness list and that there were other means by which the evidence could be presented (medical records). Thus, the trial court denied Blue Harvest's motion for an adjournment.

-13-

Based on the foregoing, the trial court did not abuse its discretion in denying Blue Harvest's motion for an adjournment. See *Woodard*, 473 Mich at 12. Although this was its first motion to adjourn, Blue Harvest failed to exercise due diligence and neglected to provide a witness list. See *Tisbury*, 194 Mich App at 20. Further, Blue Harvest has not established that it suffered any injustice as a result of the trial court's denial because it had the medical records and plaintiff did not call the doctor to testify; therefore, Blue Harvest was not denied the opportunity to cross-examine a witness who testified at trial. See *id*. As a result, the trial court did not abuse its discretion in denying Blue Harvest's motion for an emergency adjournment. See *Woodard*, 473 Mich at 12.

VII.

Lastly, Blue Harvest asserts that it was entitled to partial JNOV or remittitur because the jury awarded $100,000 in lost wages even though plaintiff was medically cleared to return to work and accepted a retirement package from his employer. We disagree.

This Court reviews a trial court's decision to deny a motion for JNOV de novo. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 284; 602 NW2d 854 (1999). This Court will "view all legitimate inferences from the evidence in the light most favorable to" the nonmoving party. *Id*. "Only if the evidence so viewed fails to establish a claim as a matter of law is JNOV appropriate." *Id*.

"This Court reviews a trial court's decision to deny a motion for remittitur for an abuse of discretion." *Diamond v Witherspoon*, 265 Mich App 673, 692; 696 NW2d 770 (2005). "When reviewing a trial court's decision regarding remittitur, this Court must view the evidence in the light most favorable to the nonmoving party." *Id*.

Although plaintiff was medically cleared to return to work by his hip surgeon in February 2015, he testified at trial that he was unable both mentally and physically to return to work. In addition, he testified that he only accepted a retirement package because he was injured, and that he originally planned to work until he was 66 years old (about two additional years). The jury was entitled to believe him. See *Guerrero*, 280 Mich App at 669 ("It is the jury's responsibility to determine the credibility and weight of the trial testimony."). Further, plaintiff submitted evidence showing that his yearly income averaged about $100,000 before he was injured. Thus, viewing the evidence in a light most favorable to plaintiff, there was evidence supporting the jury's $100,000 wage-loss award, and the trial court properly denied Blue Harvest's motion for JNOV or remittitur. See *Diamond*, 265 Mich App at 692; *Badalamenti*, 237 Mich App at 284.

Affirmed.


/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Anica Letica