*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERONIQUE EGGERTON,

        Plaintiff-Appellee,

UNPUBLISHED
December 22, 2022

v

DETROIT HOTEL SERVICES, LLC,

        Defendant-Appellant.

No. 360251
Wayne Circuit Court
LC No. 20-007690-NO

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

In this premises liability action, defendant, Detroit Hotel Services, LLC, appeals by leave granted[1] the trial court order denying its motion for summary disposition. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Detroit Hotel Services, LLC, operates and manages the Marriott Hotel Detroit Renaissance Center. Plaintiff, Veronique Eggerton, was at the hotel for a multi-day conference. On December 2, 2018, she was injured in the hotel's ballroom, which was being used as a dining hall. Eggerton wanted a cup of tea, so she walked toward a buffet table and got in line. While walking in line between two tables, her "shoe caught on something," which caused her to trip and fall. Her shoulder was fractured because of the fall. Eggerton explained that she looked back to see what had caused her to trip. She determined that it was "a metal grid." One of the corners of the grid was upturned. Eggerton did not know whether the corner of the grid was upturned prior to her fall. She explained that she did not see the grid before her fall because there were "so many people walking around, waiting in line" and because "with tables on one side, there was no way I could have seen what was on the floor." Photographs taken after the incident depict the grid as square-shaped with a dark blue-green pattern and a gray trim around the edges. The carpet in the ballroom

---

[1] *Eggerton v Detroit Hotel Servs, LLC*, unpublished order of the Court of Appeals, entered April 4, 2022 (Docket No. 360251).

was a pattern of dark colors (blue, teal, and black) with light accent colors (cream, gray, and white). The carpet was installed in square quadrants with sharp lines and color contrasts between the various patterned sections.

The hotel's director of engineering testified that the electrical grid's condition was unsafe and that, to make the grid safe, the rubber around the edge of the grid would need to be replaced or taped down. He explained that, if a grid with unsafe edges is reported, then the protocol is to tape down the edges in order to make sure that "no one trips." However, despite identifying the grid's condition as unsafe, when asked if the edges of the grid should have been taped down, he stated "not necessarily." He added that there "is no fixed schedule" for taping or re-taping the electrical grids and that his department takes care of "[a]nything that is reported to us," but that they do not "go around looking for any broken things." The record also reflects that other electrical grids in the ballroom were taped down on the date of Eggerton's fall. The hotel's engineering director explained that the other grids were taped to prevent people from falling.

Eggerton filed a complaint alleging Detroit Hotel Services, LLC was liable for her injuries under premises liability and ordinary negligence theories. Detroit Hotel Services, LLC moved for summary disposition claiming that the grid was an open and obvious hazard and that Eggerton had not established that it had notice of the hazard. In response, Eggerton argued that her claim sounded in both ordinary negligence and premises liability, that the grid, including the upturned corner, was not open and obvious and that Detroit Hotel Services, LLC had constructive notice of the grid.

Following oral argument, the trial court denied Detroit Hotel Services, LLC's motion for summary disposition. The court noted that, per Eggerton's testimony, the ballroom was crowded, the lighting was dim, and the carpet was multicolored. Under those circumstances, the court concluded that "whether an average person with ordinary intelligence would have discovered the defect would be a question of fact." The court also determined that there was a fact question as to whether Detroit Hotel Services, LLC had constructive notice based upon testimony that there were no routine inspections to check for dangerous conditions.

This appeal by leave granted follows.

II. SUMMARY DISPOSITION

A. STANDARD OF REVIEW

Detroit Hotel Services, LLC argues that the court erred by denying its motion for summary disposition because there is no question of fact regarding whether the grid was an open and obvious hazard without any special aspects. This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. at 160. Only when there is no genuine issue of material fact may the motion be granted. See *id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

B. ANALYSIS

1. NATURE OF THE CLAIM

Detroit Hotel Services, LLC asserts that Eggerton's claim is grounded in premises liability, not ordinary negligence. We agree. "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). Further, "[w]hen the claim is based on a condition of the premises, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 13; 930 NW2d 393 (2018) (quotation marks and citation omitted). In this case, Eggerton's claim arose from a condition on Detroit Hotel Services, LLC's property (the electrical grid on the ballroom floor). Thus, the claim sounds only in premises liability.

2. OPEN AND OBVIOUS

Detroit Hotel Services, LLC next asserts the trial court erred by determining that there was a question of fact as to whether the hazard was open and obvious. We disagree. "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001). However, the premises owner's duty does not extend to conditions that are "open and obvious." *Id*. If the conditions "are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Id*. (quotation marks and citation omitted). In analyzing whether a condition is open and obvious, we use the objective test of "whether a reasonable person in [plaintiff's] position would foresee the danger." *Joyce v Rubin*, 249 Mich App 231, 238-239; 642 NW2d 360 (2002) (quotation marks and citation omitted). Likewise, we analyze whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Id*. at 238 (quotation marks and citation omitted).

Detroit Hotel Services, LLC points to evidence in the record indicating that the hazard was open and obvious. Specifically, Detroit Hotel Services, LLC notes that even in the dim lighting, Eggerton stated that she did not have difficulty seeing in the ballroom. She also admitted that, after she fell, she looked behind her and saw that she had tripped over a grid. Eggerton stated that she noticed and was aware of similar electrical grids throughout the room before her fall. Detroit Hotel Services, LLC further argues that the color and pattern of the grid is not similar to those of the carpet; thus, the grid did not blend in with the surrounding carpet and the grid was readily observable in contrast to the carpet. Finally, Detroit Hotel Services, LLC notes that Eggerton was distracted while in the ballroom and that those distractions were not enough to preclude the open and obvious doctrine. See *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 716; 737 NW2d 179 (2007) (stating that "mere distractions are not sufficient to prevent application of the open and obvious danger doctrine.").

Although the evidence highlighted by Detroit Hotel Services, LLC is supportive of its argument that the hazard was not open and obvious, we have to view the evidence in the light most favorable to Eggerton, the non-moving party. Eggerton testified in her deposition that she did not see the grid until after she had tripped on it. Additionally, the ballroom was crowded, and "there was [sic] so many people walking around, waiting in line" to get to the buffet tables. Eggerton also testified that there was "no way" she could have seen the grid on the floor with how the tables were arranged in the room. One of the tables to the side of the grid blocked the view of it. Additionally, Eggerton stated that the lighting in the ballroom was "dim" and "not bright."

Further, the grid blended into the surrounding carpet pattern. Upon review of the photograph of the grid and carpet, a reasonable person in Eggerton's position may not have noticed the grid as being different from the carpet pattern upon a casual inspection. The grid was a dark bluish color with a gray-silver border. The carpet was predominantly dark blue and teal with accents of gray, white, and cream. The grid was a square shape, and the carpet patterns appear to be arranged in square quadrants. Consequently, because the color and pattern of the grid reasonably blended in to the surrounding carpet (especially in a room with dim lighting), we conclude that an average person of ordinary intelligence may not have immediately identified the grid, including its upturned corner, as a hazard upon a casual inspection.

### 3. NOTICE

Finally, Detroit Hotel Services, LLC asserts that there was no question of material fact regarding whether it had notice of the grid and its upturned corner. We disagree.

A premises possessor's "duty to a visitor depends on that visitor's status." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). It is undisputed that Eggerton was an invitee. "[A]n invitee is entitled to the highest level of protection under premises liability law." *Id*. at 597. The premises possessor "has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the [premises possessor] to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id*. "A premises owner breaches its duty of care when it knows or should know of a dangerous condition on the premises which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016) (quotation marks and citation omitted).

Therefore, in order for a plaintiff who is an invitee to prove that a premise possessor breached its duty of care, the plaintiff must present evidence that the premises possessor had "actual or constructive notice of the dangerous condition." *Id*. at 10. To do so, the plaintiff must show that the premises possessor knew of the alleged defect "or should have known of it because of its character or the duration of its presence." *Id*. at 11. Moreover, as clarified by our Supreme Court in *Lowrey*, when moving for summary disposition, the premises possessor does not have "to present evidence of a routine or reasonable inspection under the instant circumstances" in order to

prove that it lacks notice. *Id*. at 10.[2] Rather, in response to a summary disposition motion based on an alleged lack of notice, the burden is on the plaintiff to present evidence of actual or constructive notice. *Id*.

In this case, Eggerton has not presented any evidence that Detroit Hotel Services, LLC had actual notice of the alleged defect. Thus, she may only prevail is she presented sufficient evidence to establish that there is a question of fact with regard to whether Detroit Hotel Services, LLC had constructive notice. We conclude that, based on this record, she had done so.

First, notwithstanding that Detroit Hotel Services, LLC owes its invitees—like Eggerton— a duty to make the premises safe by inspecting the premises and making necessary repairs or otherwise warning its invitees of the hazards that it should have discovered, see *Stitt*, 462 Mich at 597, the testimony shows that Detroit Hotel Services, LLC did not conduct *any* inspections. Its director of engineering expressly stated that its protocol was reactionary. If a hazard were reported, then it would be fixed. He stated that "[w]e don't go around looking for *any* broken things." Second, Eggerton presented evidence that the electrical grids, like the one that she tripped on, were known to be a safety hazard. The director of engineering explained that the hotel had a protocol to tape down the edges of any grids that are reported to be unsafe. The reason they are taped is to make sure that "no one trips." At the time of Eggerton's accident, several other metal grids in the ballroom had been taped down to prevent tripping. Moreover, when presented with a photograph of the grid that Eggerton tripped on, the director first acknowledged that the upturned edge was a safety hazard. He explained that to fix it, the rubber around the grid would either have to be replaced or the edges would have to be taped down. He also stated, however, that the edges of the grid Eggerton tripped should not have necessarily been taped down in this case.

Viewing the above evidence in the light most favorable to Eggerton, it is reasonable to infer that the electrical grids in the ballroom had ongoing safety concerns. That is, there nature was such that they presented an ongoing and known risk of becoming defective and tripping the hotel's guests. Rather than proactively examining the grids prior to inviting its invitees to traverse the ballroom, Detroit Hotel Services, LLC adopted a protocol wherein it would conduct no inspections and instead would take corrective action only after a hazard had been reported. Further, it is reasonable to infer that the defect existed prior to Eggerton's fall. She presented photographs of the upturned corner of the grid. She also testified that her foot caught on something. She did not know if the grid's corner had been upturned to the same degree as shown in the photograph prior to her fall. However, it is reasonable to infer that if the corner had been securely affixed to the floor, the contact between her foot and the edge of the grid would not have led to a significant upturn to the corner. Under such circumstances, a jury could reasonably infer that the nature of the condition was such that Detroit Hotel Services, LLC should have been aware of the defect prior to Eggerton's fall. The trial court, therefore, did not err by determining that

---

[2] We note that, although *Lowrey* stated that a premises possessor does not have to present evidence of its inspections, *Lowrey*, 500 Mich at 9-10, it did not profess to diminish the premises possessor's duty of care, which includes an obligation to make its premises safe for its invitees by conducting inspections, *Stitt*, 462 Mich at 597.

there was a question of fact with respect to whether Detroit Hotel Services, LLC had notice of the defect prior to Eggerton's fall.

Affirmed. Eggerton may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan