*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS MILLER and MARY ANN MILLER,

        Plaintiffs-Appellants/Cross-Appellees,

v

J.P. MORGAN CHASE BANK, N.A., METRO CONSULTING ASSOCIATES, LLC, and THE ARCHITECTS PARTNERSHIP, LTD.,

        Defendants,

and

SCOTT WESNEY CONSTRUCTION, LLC,

        Defendant-Appellee/Cross-Appellant,

and

JONES LANG LASALLE AMERICAS, INC.,

        Defendant-Appellee.

UNPUBLISHED
July 09, 2025
2:24 PM

No. 368053
Oakland Circuit Court
LC No. 2022-194368-NO

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

        Plaintiff, Thomas Miller, and his wife, Mary Ann Miller,[1] filed this action against several defendants after plaintiff fell and suffered injuries on property occupied by defendant, J.P. Morgan Chase Bank, N.A. ("Chase"). Plaintiff resolved his claims against Chase and one other defendant while the action was pending, but plaintiff litigated the case to conclusion against three defendants,

---

[1] Mary Ann Miller's involvement in this case is limited to her claim for loss of consortium, so we will refer to Thomas Miller as "plaintiff."

including Scott Wesney Construction, LLC ("Wesney"), and Jones Lang LaSalle Americas, Inc. ("Jones"). Both of those defendants, which worked on construction of an entrance to a Chase bank branch, obtained summary disposition under MCR 2.116(C)(10). Plaintiff appeals of right the trial court's order granting that relief, and Wesney has filed a cross-appeal. We affirm the trial court's award of summary disposition to Wesney and Jones, so we need not address the cross-appeal.

## I. FACTUAL BACKGROUND

In 2017 and 2018, Chase hired several companies, including Wesney and Jones, to design and construct a new entrance to its branch office in Waterford. The new entrance along the east side included a ramp that was compliant with the Americans With Disabilities Act (ADA), 42 USC 12101 *et seq*. A new sloped sidewalk was constructed on the west side that did not comply with the ADA, but replaced a level sidewalk. Jones served as the construction manager for the project, and Wesney performed construction work on the project.

On March 22, 2021, plaintiff went to the bank at about 3:00 p.m. to handle some business, and he admitted at his deposition that the weather was "gorgeous" that day. He parked his vehicle facing the bank's entrance, and he walked along the driver's side of his vehicle to enter the bank. Plaintiff stepped up onto a curb to reach the sloped sidewalk on the west side to walk into the bank. When he walked over the curb to enter the bank, he admitted that he did not trip because he could see the height difference between the parking lot and the curb for the sloped sidewalk.

Plaintiff conducted business inside the bank for about five minutes and then walked back to his vehicle using the same path that he took to enter the bank. Although plaintiff watched where he was going, he was not looking down at his feet. As he stepped down from the sidewalk to the parking lot with his right foot, he thought he saw a step. When plaintiff moved his right foot off the sidewalk, his leg gave out and he fell down onto the parking lot. He agreed there was no debris or other substance in the parking lot that caused his fall. Plaintiff was assisted by a passerby after he suffered severe injuries as a result of the fall.

There was no yellow paint along the curb or sidewalk edge where plaintiff fell. The curb and a two-foot-wide area of the parking lot abutting the sloped sidewalk were made of the same material at the time of plaintiff's fall. Plaintiff believed that the height of the curb was not standard, but the curb ranged from about seven inches to three or four inches. The sloped sidewalk and curb, as well as the approximate location where plaintiff fell, are depicted in this photograph:



Plaintiff believed that if the sidewalk curb had been painted, he would have paid more attention to it when he left the bank and approached his vehicle. Specifically, he thought that the paint would have alerted him to the height discrepancy of the sidewalk as it slanted down. Plaintiff agreed that he did not fall when he went over the curb to enter the bank because he could readily see the height discrepancy from that angle as he stepped up onto the curb.

In plaintiff's third amended complaint, he pleaded a premises-liability claim against Chase as the occupant of the property. Plaintiff presented an ordinary negligence claim against the other four defendants for their involvement in the design and construction of the changes to the entrance of the bank branch. Plaintiff generally alleged that the sidewalk where he fell was neither designed nor constructed in a reasonably safe manner. In particular, there was no marking or paint applied to the curb, even though the previous sidewalk curb had been painted yellow. He alleged that the applicable building codes were not followed, and the completed construction included a hazardous and dangerous condition that caused his fall. During the course of the proceedings, Chase and an engineering firm, Metro Consulting Associates, LLC, resolved plaintiff's claims against them and were dismissed from the action. The other three defendants, including Jones and Wesney, obtained summary disposition.[2]

---

[2] The third defendant, The Architects Partnership, Ltd., obtained relief under MCR 2.116(C)(7) on the theory that plaintiff's claim against it was barred by the statute of limitations. That theory was not advanced by Wesney and Jones, and plaintiff has not appealed the summary disposition award in favor of The Architects Partnership, Ltd., here, so we need not address the statute of limitations.

The trial court granted summary disposition under MCR 2.116(C)(10) to Jones and Wesney in a written opinion and order issued on September 22, 2023. Specifically, the trial court reasoned that the negligence claim against Jones was more accurately characterized as a premises-liability claim, and Jones plainly was not the owner or possessor of the land on which plaintiff fell, so Jones was entitled to summary disposition under MCR 2.116(C)(10). Turning to Wesney, the trial court explained that plaintiff "failed to present facts to demonstrate the step posed an unreasonable risk of harm because [Wesney] did not mark the step with a contrasting color," so Wesney was entitled to summary disposition under MCR 2.116(C)(10). Plaintiff thereafter appealed those rulings.

## II. LEGAL ANALYSIS

On appeal, plaintiff contests the trial court's decisions to award summary disposition under MCR 2.116(C)(10) to Jones and Wesney. We review de novo the trial court's rulings on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *Id*. at 160. When addressing such a motion, "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds might differ.' " *Id*. With these standards in mind, we will analyze the summary disposition award to each of the defendants in turn.

## A. THE NEGLIGENCE CLAIM AGAINST JONES

The trial court based its ruling granting summary disposition to Jones on the determination that plaintiff's negligence claim against Jones "is a classic premises liability claim," rather than an ordinary negligence claim. "Michigan law distinguishes between a claim of ordinary negligence and a claim premised on a condition of the land." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 625; 971 NW2d 716 (2021). "Whether the gravamen of an action sounds in negligence or in premises liability is determined by considering the plaintiff's complaint as a whole, regardless of the labels attached to the allegations by the plaintiff." *Id*. "When it is alleged that the plaintiff's injuries arose from a dangerous condition on the land, the claim is one of premises liability rather than one of ordinary negligence." *Id*. If the claim sounds in premises liability, rather than ordinary negligence, a defendant that "is not an owner, possessor, or occupier of the premises . . . cannot be held liable on a premises-liability theory." *Bowman v Walker*, 340 Mich App 420, 426; 986 NW2d 419 (2022). Because Jones cannot possibly be characterized as an owner, possessor, or occupier of the premises where plaintiff fell and injured himself, the trial court properly awarded summary disposition to Jones under MCR 2.116(C)(10) if plaintiff's claim against Jones sounded in premises liability.

Here, as in *Wilson v BRK, Inc*, 328 Mich App 505, 512; 938 NW2d 761 (2019), plaintiff's "lawsuit ultimately concerns an injury arising from an allegedly dangerous condition on the land, i.e., a step that must be navigated . . . in order to enter and exit" the premises. Plaintiff had to step up from the parking lot onto the curb and sidewalk to enter the Chase bank, and then he had to step down from the sidewalk and curb onto the parking lot surface to return to his vehicle. The step up and the subsequent step down involved encountering what plaintiff described in his complaint as a dangerous condition on the premises, which turned his claim against Jones into one that sounded

in premises liability, rather than ordinary negligence. See *id*. at 512-513. And because Jones was "not an owner, possessor, or occupier of the premises, [Jones] cannot be held liable on a premises-liability theory." *Bowman*, 340 Mich App at 426.

Plaintiff insists he may separately state a claim involving a theory independent of premises liability based on the conduct of Jones. See *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 14-15; 930 NW2d 393 (2018). In making that argument, plaintiff concedes—as he must—that he must have proof of additional conduct by Jones beyond the fulfillment of its contractual obligations that was the proximate cause of plaintiff's injuries. In other words, plaintiff cannot rely simply on the existence of the hazardous condition. Although Jones was involved in the construction project, Jones completed that work in 2018. Plaintiff fell in the parking lot in 2021, nearly three years after Jones completed its work. Because Jones had no continuing involvement with the Chase premises after the final inspection occurred on April 6, 2018, and plaintiff has no evidence that his fall was traceable to anything involving Jones other than the allegedly dangerous condition on the premises, the trial court appropriately treated plaintiff's claim against Jones as sounding in premises liability and correctly awarded summary disposition to Jones under MCR 2.116(C)(10).

## B. THE NEGLIGENCE CLAIM AGAINST WESNEY

The trial court granted summary disposition under MCR 2.116(C)(10) to Wesney based on the observation that plaintiff "failed to present facts to demonstrate the step [from the parking lot to the curb and sidewalk] posed an unreasonable risk of harm because [Wesney] did not mark the step with a contrasting color." As a threshold matter, plaintiff claims the trial court erred because it resolved the motion on that basis even though Wesney did not raise that issue in its motion for summary disposition. One of the grounds cited by Wesney in its motion was that, even if plaintiff could prove that Wesney owed a duty to him, plaintiff was the proximate cause of his injuries and Wesney did not do anything that created an unreasonable risk of harm to anybody. That argument formed the basis for the trial court's decision. Accordingly, we reject plaintiff's claim that the trial court resolved the case on a theory that Wesney did not present.

Turning to the merits of the trial court's ruling, we acknowledge that plaintiff alleged that Wesney was liable for design and construction defects by not following applicable building codes, and that Wesney's construction work created a hazardous and dangerous condition, including the failure to mark the edges of the sidewalk so customers could see where the sidewalk ended at the parking lot. But for two reasons, plaintiff cannot prevail on his negligence claim against Wesney. All negligence claims "require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F & E Oil Co*, 512 Mich 95, 110; 1 NW3d 44 (2023). Hence, unless plaintiff can meet all four of those requirements, his negligence claim must fail. Because plaintiff cannot establish either duty or causation, his negligence claim against Wesney is fatally flawed.

Duty " 'is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.' " *Kandil-Elsayed*, 512 Mich at 110 (citation omitted). "[W]hether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *Id*. (quotation marks and citation omitted). Here, plaintiff contends that Wesney owed a duty to provide some form of warning that there was a step down from the sidewalk to the parking lot because nothing made the step apparent. In *Bertrand v Alan Ford, Inc*, 449 Mich 606; 537 NW2d 185 (1995), our Supreme Court discussed

-5-

cases involving steps and noted that "the general rule emerged that steps and differing floor levels were not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous." *Id*. at 614. Our Supreme Court explained that, "because steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety." *Id*. at 616. So under "ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps 'foolproof.' " *Id*. at 616-617. But if "there is something unusual about the steps, because of their 'character, location, or surrounding conditions,' then the duty of the possessor of land to exercise reasonable care remains." *Id*. at 617.

In the companion case to *Bertrand*, *Maurer v Oakland Co Parks & Recreation Dep't*, 449 Mich at 618-621, our Supreme Court decided that there was no duty owed to the plaintiff because she testified that she did not see a step as she left a restroom. In language readily applicable to the instant case, our Supreme Court commented that, because "[t]he plaintiff's only asserted basis for finding that the step was dangerous was that she did not see it[,] the plaintiff has failed to establish anything unusual about the step that would" give rise to a duty. *Id*. at 621. As our Supreme Court put it, "[b]ecause the plaintiff has not presented any facts that the step posed an *unreasonable* risk of harm, the trial court properly granted summary disposition." *Id*. Faithfully applying that logic, we conclude that Wesney was entitled to summary disposition under MCR 2.116(C)(10) because it owed no duty to plaintiff.

Beyond that, even assuming for the sake of argument that Wesney owed plaintiff a duty to identify the drop-off from the sidewalk and curb to the parking lot, Wesney would still be entitled to summary disposition under MCR 2.116(C)(10) because plaintiff has not created a genuine issue of material fact with respect to the separate element of causation. Plaintiff navigated the step with no difficulty on his way into the bank. He stayed in the bank for only about five minutes. Plaintiff then walked out of the bank and fell at the very same place where he had just been on his way into the bank. Despite plaintiff's claim that he would have paid more attention if Wesney had painted the step, plaintiff acquired notice of the step when he walked into the bank. Simply looking where he was going when he left the bank would have prevented him from losing his footing because he admitted that he walked toward the parking lot without looking down. Thus, the trial court did not err in awarding summary disposition to Wesney under MCR 2.116(C)(10).

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates