*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BEAUMONT HEALTH,

       Plaintiff-Appellant,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

       Defendant-Appellee,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY and MICHIGAN
ASSIGNED CLAIMS PLAN,

       Defendants.

UNPUBLISHED
June 29, 2023

No. 362311
Oakland Circuit Court
LC No. 2021-188316-NF

Before: REDFORD, P.J., O'BRIEN and FEENEY, JJ.

PER CURIAM.

Plaintiff, Beaumont Health, appeals as of right the trial court's May 25, 2022 opinion and order granting Defendant, Progressive Michigan Insurance Company (Progressive), summary disposition, and the trial court's July 6, 2022 order denying plaintiff's motion for rehearing or reconsideration. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hannah Farley, Riley Holtslander's fiancé with whom he lived, testified that she researched and found on Facebook Marketplace a 2003 Suzuki motorcycle for purchase. She and Holtslander met with the seller; and after Farley paid him, Holtslander drove the motorcycle home and parked it at his mother's house. Later, after Holtslander and Farley bought a house and moved in, Holtslander drove it to their house. When asked if she knew how often Holtslander operated the motorcycle between the date of purchase and the date of the accident, Farley testified: "No, I don't

-1-

recall. Not very much." She denied having personal knowledge whether he took the motorcycle to work before August 6, 2020. Both Holtslander and Farley testified that she never drove the motorcycle, never registered it, and never insured it.

Holtslander did not own a vehicle and generally relied on a coworker for rides to work. On August 6, 2020, he did not have a ride so he drove the motorcycle to work. While on his way home he suffered injuries in a motor vehicle accident. He did not have any insurance in his name nor any in his household at the time of the accident and the motorcycle was uninsured. Progressive insured the other vehicle involved in the accident. Beaumont provided medical services to Holtslander for his accident-related injuries and sought payment from Progressive, but it refused, so Beaumont sued Progressive to recover personal protection insurance (PIP) benefits.[1]

Holtslander testified that on the date of his accident he drove the motorcycle home from work at Marsh Auto Sales in Ortonville, Michigan, about a 20-minute drive. When asked whose motorcycle it was, Holtslander explained:

> *A*. I intended it to be my fiancé's to be able to learn how to ride the bike, because I have had previous bikes in my past and I wanted to get her into the lifestyle of riding bikes and it wasn't a big sports bike or nothing. It was a good bike, so it was an easy bike for her to learn on. So I was just riding it home just because I was down on a vehicle.
>
> * * *
>
> *Q*. And when you worked at Marsh Auto Sales in the two months leading up to this incident in August of 2020, how did you get to and from Marsh Auto Sales?
>
> *A*. Either rides or at this time of day, I had the bike.

Holtslander testified that he drove the motorcycle home after the purchase. He explained that on the date of the purchase, he and Farley lived in an apartment complex in Fenton that did not care for motorcycles so he parked it in the garage at his mother's house. The motorcycle was parked in his mother's garage "[f]or a time being, yes." That was "the only parking spot I had for it."

> *Q*. Fair enough. Do you know how often the motorcycle was operated between the time it was purchased and this incident occurring in August of 2020.
>
> *A*. I am not sure.

---

[1] Plaintiff also sued the Michigan Automobile Insurance Placement Facility (MAIPF) and Michigan Assigned Claims Plan (MACP). The trial court dismissed the MAIPF and the MACP and the entities are not parties to this appeal.

*Q.* Do you know if you used it more than a dozen times?

*A.* I'm not sure.

*Q.* Okay. Do you know if Ms. Farley operated the motorcycle at all between May of 2020 and August 6, 2020?

\* \* \*

*A.* I would say she didn't, because she is not, like I said, very familiar with street bikes.

*Q.* So if anyone would have driven this motorcycle between May 25, 2020 and August 6, 2020, it would have been you?

*A.* Yes.

Holtslander testified that the motorcycle had one set of keys that were kept in the ignition. He stated that the license plate on the motorcycle when purchased was never taken off.

*Q.* So you left someone else's license plate on your bike is what you're saying?

*A.* Yes, I did.

Holtslander admitted that, for the 73 days from May 25, 2020 to August 6, 2020, he had possession of the motorcycle. He stated: "Yes, it's in my possession, but I did not operate it." Holtslander admitted that he did not register the motorcycle, obtain a license, or obtain insurance for the motorcycle. He did not know if Farley did. Holtslander testified that he did not know and did not check if the motorcycle was insured. He affirmed that Farley never drove the motorcycle. He agreed that he had been the only person who drove the motorcycle in the 73 days after its purchase.

Progressive moved for summary disposition and plaintiff opposed the motion. Progressive filed a reply brief to which plaintiff did not respond. Plaintiff, however, filed its own motion for summary disposition. The trial court dispensed with oral argument and granted Progressive's motion and denied plaintiff's motion. The trial court explained that when viewing the evidence in a light most favorable to plaintiff, the evidence established that reasonable minds could not differ in concluding that Holtslander "was an owner pursuant to MCL 500.3101(3)(l)(ii) because he had use of the motorcycle for a period that was greater than 30 consecutive days." The court ruled that because Holtslander constituted an owner and the motorcycle was uninsured, he lacked eligibility for PIP benefits which resulted in plaintiff not being able to maintain a claim for Holtslander's benefits. That prompted plaintiff to move for rehearing or reconsideration on the ground that it intended to respond to Progressive's "owner" argument during oral argument, but because the court dispensed with oral argument, it had been deprived of fundamental fairness and due process. Plaintiff asserted that the evidence established that Holtslander did not own the motorcycle or at least a question of fact existed regarding ownership. The trial court denied plaintiff's motion. It explained that it considered plaintiff's motion as a response to Progressive's reply as on leave granted, and specifically considered plaintiff's argument regarding Holtslander's status as an

owner under MCL 500.3101(3)(l)(ii). The trial court advised that it reached the same conclusion as stated in its previous opinion and order and held that Holtslander fell within the statutory definition of "owner." Plaintiff now appeals.

## II. STANDARDS OF REVIEW

Issues of statutory interpretation are questions of law reviewed de novo. *Oade v Jackson Nat'l Life Ins Co*, 465 Mich 244, 250; 632 NW2d 126 (2001). We also review de novo a trial court's decision on a motion for summary disposition. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277-278; 681 NW2d 342 (2004). Progressive moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), our Supreme Court explained the process for reviewing a motion filed under MCR 2.116(C)(10):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [Citations omitted.]
>
> * * *
>
> The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules. [*Maiden*, 461 Mich at 121.]

"This Court's task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue regarding any material fact exists to warrant a trial." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11-12; 930 NW2d 393 (2018) (quotation marks and citation omitted). A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review for an abuse of discretion a trial court's decision to omit or limit oral argument regarding a motion. *Fisher v Belcher*, 269 Mich App 247, 252; 713 NW2d 6 (2005). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## III. ANALYSIS

Plaintiff argues that it is entitled to recover PIP benefits because Holtslander was not an owner of the motorcycle under either MCL 500.3101(3)(l)(ii) or (iii) and the trial court erred by concluding that he was a constructive owner under MCL 500.3101(3)(l)(ii). For the reasons explained herein, the trial court made the correct decision.

Michigan's no-fault act requires owners of motor vehicles registered in Michigan to maintain security for payment of PIP benefits. MCL 500.3101(1). Under MCL 500.3103(1), an owner or registrant of a motorcycle must procure certain insurance for a motorcycle. If the motorcycle does not have this insurance, and an owner or registrant of the motorcycle is injured in a crash involving the uninsured motorcycle, then the owner or registrant is not entitled to PIP benefits from any source. MCL 500.3113(b).[2] If an owner or registrant does not maintain the security required under the no-fault act, the owner or registrant cannot obtain an award of noneconomic damages for his or her injuries that would otherwise meet the no-fault thresholds. MCL 500.3135(2)(c).[3]

It is undisputed that the motorcycle involved in this case did not have the required insurance, and that Holtslander was not a registrant of the motorcycle. The question on appeal is whether Holtslander constituted an "owner" of the motorcycle for no-fault act purposes.

MCL 500.3101(3)[4] uniquely defines the term "owner" for purposes of the no-fault act as follows:

(l) "Owner" means any of the following:

---

[2] MCL 500.3113(b) provides:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

* * *

(b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

[3] MCL 500.3135(2)(c) provides:

Damages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101(1) at the time the injury occurred.

[4] In 2019 the Legislature amended MCL 500.3101 modifying subsection (1), adding subsection (2), and renumbered former subsection (2) as subsection (3). The amendment reidentified MCL 500.3101(2)(k) as the current MCL 500.3101(3)(l), but the definition of "owner" was not changed. At the time the pertinent events in this case occurred and the trial court made its rulings, this statute was codified as MCL 500.3101(3)(l). Cases cited herein may refer to the previous iteration of the relevant statute.

-5-

(i)  A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.

(ii)  A person renting a motorcycle or having the use of a motorcycle under a lease for a period that is greater than 30 days, or otherwise for a period that is greater than 30 consecutive days.  A person who borrows a motorcycle for a period that is less than 30 consecutive days with the consent of the owner is not an owner under this subparagraph.

(iii)  A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.

(iv)  A person that has the immediate right of possession of a motor vehicle or motorcycle under an installment sale contract.

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690-691; 593 NW2d 215 (1999), this Court explained that MCL 500.3101's definition of "owner" means that there may be multiple owners of a vehicle for purposes of the no-fault act, and "ownership follows from proprietary or possessory usage, as opposed to merely incidental usage under the direction or with the permission of another."  This Court held "that where an uninsured motor vehicle involved in an accident has more than one owner, all the owners come under the statutory exclusion for personal protection insurance benefits."  *Id*. at 692.

In *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530-532; 676 NW2d 616 (2004), our Supreme Court explained that the term "having the use of," as provided in MCL 500.3101, does not mean that a person must have actually used the vehicle before a court may find that the person is an "owner" under the no-fault act, because the focus must be on the nature of the person's right to use the vehicle.  In *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491-492; 775 NW2d 151 (2009), this Court explained that the user of another person's uninsured motor vehicle who is injured in an accident was not an "owner" under MCL 500.3101(3)(l)(i) because each time she used the vehicle during about a monthlong period, she had to obtain permission and get the keys from the owner to use the vehicle.

Ownership under MCL 500.3101(3)(l)(iii), requires that the person hold legal title to a motor vehicle or motorcycle.  To determine whether Holtslander held legal title to the motorcycle at the time of the accident requires considering how legal title is transferred from a seller to a purchaser.  The Motor Vehicle Code (MVC), MCL 257.1 *et seq*., governs legal title transfer.  Under the MVC, MCL 257.238(8) requires the seller to endorse the certificate of title and deliver it to the purchaser or transferee of the vehicle or motorcycle and disclose the information required under MCL 257.233a.  The effective date of the transfer, sale, or assignment of the title is defined by MCL 257.233(9) as "the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee."

In this case, the evidence establishes that Farley paid for the motorcycle and obtained the title signed by the seller delivered to her at the time of purchase. Accordingly, she held legal title to the motorcycle and under MCL 500.3101(3)(l)(iii) constituted an "owner" of it. Therefore, Holtslander was not an "owner" as defined under MCL 500.3101(3)(l)(iii). The trial court correctly did not conclude that Holtslander constituted an "owner" under MCL 500.3101(3)(l)(iii). Rather the trial court held that Holtslander was a constructive "owner" under MCL 500.3101(3)(l)(ii). Whether Holtslander was a constructive "owner" under MCL 500.3101(3)(l)(ii) involves a different analysis focusing on if he had the use of it.

The record reflects that, after Farley purchased the motorcycle, she took no steps to register it with the Secretary of State, did not obtain a valid license plate for the motorcycle, nor did she obtain insurance as required under the no-fault act. From the date of purchase to the date of his accident, Holtslander was the only person to drive the motorcycle. Both he and Farley testified that Farley never drove it. The record indicates that Holtslander drove the motorcycle on the date of the purchase. He testified that he drove it home. He also testified that he drove and parked it at his mother's house.[5]

Farley testified that she did not know how often Holtslander drove the motorcycle. Holtslander testified that the motorcycle was always parked with the keys in the ignition. No evidence indicates that Holtslander had to seek or ever sought permission to operate the motorcycle. Holtslander's testimony reveals that he affirmed he had possession of the motorcycle. Holtslander admitted that only he drove the motorcycle between May 25, 2020 and August 6, 2020. He testified further that he lacked certainty how often the motorcycle had been driven. Holtslander did not testify and no evidence establishes that he only drove the motorcycle twice, as plaintiff contends. In fact, when Progressive's counsel specifically asked Holtslander if he had driven the motorcycle more than a dozen times, Holtslander testified, "I'm not sure." He did not deny it or specify how many times he drove it.

The evidence indicates that Holtslander had unfettered access to the motorcycle and had the use of it without seeking permission. No evidence suggests that he borrowed the motorcycle. No evidence indicates that he drove the motorcycle at Farley's direction. Further, no evidence establishes that Farley put any limitations or restrictions on Holtslander's use of it. Holtslander's testimony indicates that he had use of the motorcycle for a period greater than 30 consecutive days from May 25, 2020 to August 6, 2020. The trial court did not err by concluding that Holtslander was an "owner" under MCL 500.3101(3)(l)(ii). Viewing the evidence in a light most favorable to plaintiff, the nonmoving party, the trial court correctly discerned that reasonable minds could not differ on the issue of Holtslander's having use of the motorcycle for the requisite period making him a constructive owner under MCL 500.3101(3)(l)(ii).

Plaintiff is correct that Holtslander was not an owner as defined under MCL 500.3101(3)(l)(iii) because no evidence established that he held legal title to the motorcycle. Plaintiff's argument in this regard, however, is not dispositive because the trial court properly understood that ownership for no-fault act purposes can be held by more than one person

---

[5] The record does not clearly specify the date on which Holtslander drove the motorcycle to his mother's house but he testified that her house was not far from his home.

depending upon the circumstances, and in this case, although Holtslander could not be held a title holding owner under MCL 500.3101(3)(l)(iii), he could be held a constructive owner under MCL 500.3101(3)(l)(ii). The trial court did not err in making that determination. Because Holtslander held "owner" status under MCL 500.3101(3)(l)(ii), he had the obligation to insure the motorcycle as required under MCL 500.3101(1), and having failed to do so, he lacked entitlement to recover PIP benefits under MCL 500.3113(b) and MCL 500.3135(2)(c). Accordingly, plaintiff could not maintain an action as his assignee for PIP benefits, and it is not entitled to appellate relief.

Plaintiff also argues that the trial court abused its discretion by dispensing with oral argument because it deprived plaintiff an opportunity to address a new argument raised the first time by Progressive in its reply brief and thereby deprived plaintiff due process and fundamental fairness that is required under the court rules. We disagree.

A trial court has the discretion to dispense with oral arguments on a motion. MCR 2.119(E)(3). A trial court does not abuse that discretion when it dispenses with oral arguments if it is fairly apprised of the issues that need to be decided. *Fisher*, 269 Mich App at 252.

In this case, Progressive moved for summary disposition on April 7, 2022. In its initial brief, Progressive raised the constructive ownership issue, albeit without specifically invoking MCL 500.3101(3)(l)(ii). Additionally, it erroneously asserted that Holtslander fit the definition of "owner" under MCL 500.3101(3)(l)(iii). Plaintiff filed its opposition brief on April 19, 2022, focusing predominantly on Farley's transaction and acquisition of the motorcycle and receipt of the title but ignoring Progressive's argument regarding Holtslander's having use of it. Plaintiff filed its own motion for summary disposition on April 21, 2022. Progressive filed its reply brief on May 18, 2022, seven days before the scheduled motion hearing and set forth in detail its argument regarding ownership and specifically invoked MCL 500.3101(3)(l)(ii). Plaintiff did not file a response to Progressive's reply brief. Plaintiff, apparently, made the strategic decision to address the MCL 500.3101(3)(l)(ii) issue during oral argument.

On May 24, 2022, the day before the scheduled date for the hearing, the trial court's staff attorney notified the parties via e-mail that the trial court dispensed with oral argument and canceled the May 25, 2022 hearing on Progressive's and plaintiff's competing motions for summary disposition. The trial court stated in its opinion and order entered May 25, 2022, that it had dispensed with oral argument and canceled the hearing. The trial court explained that it considered the parties' motions, plaintiff's response, and Progressive's reply, and the evidence each party presented in the light most favorable to plaintiff, and determined that reasonable minds could not differ in concluding that Holtslander qualified as an "owner" pursuant to MCL 500.3101(3)(l)(ii) because he had use of the motorcycle for greater than 30 consecutive days, making Holtslander ineligible for PIP benefits, which resulted in plaintiff's inability to maintain a claim for Holtslander's benefits. The trial court, therefore, granted Progressive's motion and denied plaintiff's motion.

The trial court's summary disposition decision prompted plaintiff to move for rehearing or reconsideration. Plaintiff asserted that it had no opportunity to respond to Progressive's argument that Holtslander had constructive ownership of the motorcycle under MCL 500.3101(3)(l)(ii). Plaintiff argued that fundamental fairness and due process required the trial court to provide

plaintiff an opportunity to respond. Plaintiff attached a copy of Holtslander's deposition and Farley's deposition to its brief and cited to portions of their testimonies to support its position that Holtslander did not own the motorcycle. The trial court, in its order regarding plaintiff's motion for rehearing or reconsideration, specifically stated that it considered as on leave granted plaintiff's motion as its response to Progressive's reply. The trial court indicated that it revisited its decision regarding ownership under MCL 500.3101(3)(l)(ii), but reached the same conclusion that Holtslander constituted an "owner" under the no-fault act's statutory definition.

Even if in the first instance it could be concluded that the trial court abused its discretion by dispensing with oral argument, the record makes clear that the trial court gave plaintiff an opportunity to oppose Progressive's argument that Holtslander was an "owner" of the uninsured motorcycle under MCL 500.3101(3)(l)(ii). Plaintiff, therefore, was neither denied fundamental fairness nor due process.

Plaintiff's argument on appeal fails to acknowledge that the trial court actually reconsidered its previous decision and afforded plaintiff as on leave granted the opportunity to fully respond to Progressive's argument. Therefore, even if the trial court abused its discretion by dispensing with oral argument, plaintiff is not entitled to relief because the trial court cured its purported error.[6]

Affirmed.

/s/ James Robert Redford
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

[6] After oral argument plaintiff moved to file supplemental authority, recent unpublished opinions, and defendant opposed the motion. We granted the motion. *Beaumont Health v Progressive Mich Ins C*o, unpublished order of the Court of Appeals, entered June 16, 2023 (Docket No. 362311). We have reviewed the parties' submissions and the supplemental authority and are not persuaded that a different disposition of this appeal is warranted.