*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF WILLIAM HOWARD MCDUFFIE-CONNOR, by its Personal Representative, CHANDRA MCDUFFIE,

Plaintiff-Appellee,

v

SCOTT M. NEAL and MEMBERSELECT INSURANCE COMPANY,

Defendants,

and

NSS CONSTRUCTION, INC.,

Defendant-Appellant.

UNPUBLISHED
February 8, 2024

Nos. 358870, 358987, 360585
Wayne Circuit Court
LC Nos. 20-007497-NF,
20-012305-NF, 20-007497-NF

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

In Docket No. 358870, defendant NSS Construction, Inc. (NSS) appeals on leave granted the trial court's October 1, 2021 order denying the motion of defendants, NSS and Scott M. Neal, seeking relief regarding plaintiff's alleged spoliation of evidence. In Docket No. 358987, NSS appeals on leave granted the trial court's August 4, 2021 order granting plaintiff's motion for relief regarding NSS's alleged spoliation of evidence and imposing sanctions against NSS. In Docket No. 360585, NSS appeals on leave granted the trial court's February 23, 2022 order denying NSS's motion for summary disposition under MCR 2.116(C)(8) and (10). We vacate the trial court's August 4, 2021 order granting plaintiff's motion for relief regarding NSS's alleged spoliation of evidence and imposing sanctions against NSS, affirm the trial court's October 1, 2021 order denying NSS's motion regarding plaintiff's alleged spoliation of evidence, vacate the trial court's February 23, 2022 order denying NSS's motion for summary disposition, and remand this matter to the trial court for entry of summary disposition in favor of NSS.

-1-

# I. FACTS

These consolidated cases arise from an automobile accident that occurred on July 17, 2019 on Meyers Road in Detroit. On that day, plaintiff's decedent, William Howard McDuffie-Connor, was driving a white 2000 Chrysler Sebring convertible. Defendant Neal was driving a 1997 Ford 8000 dump truck in the course of his employment with defendant NSS, the owner of the dump truck.

The accident was recorded by a surveillance camera near the site of the accident. The video recording shows the dump truck traveling northbound on Meyers Road and an automobile traveling behind the dump truck. McDuffie-Connor's Sebring was parked on the far right side of the northbound lane of the street, which the parties do not dispute is a parking lane not intended for vehicle travel. As the dump truck moved past the parked Sebring, McDuffie-Connor began to travel northbound in the Sebring in the parking lane, keeping pace with the dump truck and apparently attempting to pass the dump truck on the right. A few moments later, Neal turned the dump truck to the right, attempting to enter a driveway. The Sebring struck the dump truck and then overturned; McDuffie-Connor was killed.

Neal later testified during his deposition that on the day of the accident he was traveling on Meyers Road to pick up a load of gravel in the course of his employment with NSS. Neal testified that before driving the dump truck that day, he inspected the truck and "everything" on the dump truck was working properly. Neal told the investigating officers that he activated his right turn signal before beginning the right turn into the driveway. He testified that he looked in his mirror before turning right, but did not see the Sebring. Police inspection of the dump truck post-accident revealed that the dump truck's turn signals, including the right rear turn signal, lighted but did not blink, and that the brakes were not properly aligned. Neal tested negative for alcohol or substances after the accident.

The accident was witnessed by Matthew Pace, who was driving the car traveling immediately behind the dump truck on Meyers Road at the time of the collision. Pace testified that the white Sebring was parked in the parking lane on the right side of the northbound lane of Meyers Road. As Pace passed the Sebring, the Sebring began to drive alongside Pace while in the parking lane. Pace slowed to enable the Sebring to pull into the northbound lane in front of Pace. Instead of pulling in front of Pace, however, the Sebring continued to drive northbound in the parking lane. Pace testified that the driver of the Sebring was bobbing his head as though listening to music. The Sebring then accelerated forward as though "trying to speed off." At the same time that the Sebring accelerated forward, Pace saw the dump truck slow, saw the dump truck's brake lights, and saw the dump truck's right turn signal blinking. The dump truck then turned right; the Sebring hit the front passenger-side tire area of the dump truck and the Sebring flipped. Pace testified, in relevant part:

Q:      All right. You're following behind the dump truck, correct?

A:      Yes.

Q:      At any point did the dump truck put on its turn indicator?

A:     He turned them on as he got closer towards the railroad track.

Q:     And was that his right turn indicator that he had on?

A:     Yes.

Q:     And did that right turn indicator blink?

A:     Yes.

Q:     And you saw it blink, correct?

A:     Yeah, it was blinking for a while before he came to a stop.

Q:     When you say before he came to a stop, was that before he came to a stop after the accident or prior to the accident?

A:     Before and after.

Q:     So explain that to me.

A:     As we were coming towards the railroad track and we were following behind him, the dump truck, he never stopped.  When he turned his blinker on, he slowed down and he turned his blinker on.  As he turned his blinker on, that's when he began his turn.  But at the same time as him turning, the white car – the guy in the white car hit his gas and sped up.

Q:     And is that when the white car and the dump truck collided?

A:     Yes.

Q:     Did you see the dump truck's brake lights at all?

A:      I saw his brake lights when he slowed down to turn.

Q:      With respect to the driver of the white vehicle, did he ever look over toward your vehicle at you and your brother that you can recall?

A:     Yes, he did.

Q:     And did he indicate like that he wanted to get into your travel lane?  Did he make any type of hand motions toward you?

A:     No.  As he was on the side of us, I – when I slowed down, I waited for him to go in front, but he just was like – just like bobbing his head to us, like listening to music.  And then as we got closer to where the accident happened, he just hit his gas and I guess he tried to beat the turn of the truck and he hit the truck and flipped.

Q:    If you recall, was the driver of the white vehicle far enough behind the dump truck to see the dump truck's turn signal?

* * *

A:    Yes, being on the side of my vehicle the driver of the white vehicle would have been able to see the turn signal of the truck.

Q:    And would he have been able to see the brakes, the brake lights of the dump truck?

A:    Yes.

Chandra McDuffie, the decedent's mother, testified during her deposition that as a child the decedent had been diagnosed with attention-deficit/hyperactivity disorder (ADHD) and had taken medication for the condition, but as an adult had chosen to stop taking the medication. Chandra McDuffie testified that when the decedent was not taking the medication, she noticed a difference in his behavior, specifically a decrease in his attention span. She also testified that the decedent had worked the night shift before the accident and had finished work at 8:00 a.m. She later learned that the accident occurred at 11:30 a.m. The Wayne County Prosecutor's Office determined that there was insufficient evidence to establish that any crime had been committed and Neal was not cited for the accident.

After the accident, the Sebring was towed to a Detroit police impound lot. On August 18, 2019, Chandra McDuffie was appointed personal representative of McDuffie-Connor's estate. Chandra thereafter photographed the Sebring at the impound lot, but did not have the vehicle inspected. Chandra received a letter from the police department notifying her that the Sebring would be sold if she did not retrieve it. She did not retrieve the Sebring; the car was sold at auction on October 2, 2019, and was crushed by the purchaser and sent to Ferrous Processing & Trading Co. on October 16, 2019.

The dump truck also was towed and impounded by the police. In December 2019, NSS closed its business, its shop was lost to foreclosure, and the truck was sold at auction. The owner of NSS, Nick Schubeck, explained that when the business closed he disposed of most of the business's records, including records relating to the dump truck that were not in the truck, by putting them in a dumpster.

On June 15, 2020, plaintiff, Chandra McDuffie, as the personal representative of McDuffie-Connor's estate, filed a complaint in the trial court. The complaint alleged, in relevant part, negligence, gross negligence, willful and wanton misconduct, and wrongful death by Neal[1] and NSS, and also owner liability under MCL 257.401 and vicarious liability by NSS. In May

---

[1] The trial court dismissed without prejudice the estate's claim against Neal, who is no longer a defendant.

2021, plaintiff sought sanctions against NSS for spoliation of evidence, specifically, documents regarding Neal's driving and employment records and the dump truck's maintenance and inspection records. Plaintiff contended that these records were relevant to the lawsuit and that NSS destroyed the evidence knowing that a lawsuit was possible. After a hearing on the motion, the trial court took the motion under advisement, ordering NSS to produce the requested documentation and the dump truck. NSS provided plaintiff with the results of Neal's negative drug and alcohol tests from the day of the accident and also Neal's CDL license and medical certificates. NSS also located the dump truck in Vermont and indicated that it was available for inspection. NSS was unable to locate or obtain the additional documentation requested, much of which Schubeck, the owner of NSS, testified he disposed of when he closed the business.

After a further hearing on the motion, the trial court imposed sanctions on NSS, finding that NSS destroyed the documentation and failed to preserve the dump truck in bad faith. The trial court struck NSS's affirmative defenses, prohibited NSS from presenting mitigating evidence, stated that it would give an adverse inference instruction at trial, and ordered NSS to pay sanctions of $3,500. The trial court thereafter denied NSS's motion for reconsideration of the order without explanation.

NSS and Neal filed a motion for relief regarding plaintiff's alleged spoliation of evidence, asserting that plaintiff had failed to preserve the Sebring and that dismissal of the complaint therefore was warranted. The trial court denied defendants' motion, reasoning that plaintiff could not produce the Sebring because it had been in police custody.

NSS moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court denied the motion "for the reasons stated on the record of the proceedings in this case on February 8, 2022." The trial court did not specifically address on the record each argument presented by NSS, but determined that questions of fact existed.

NSS and Neal applied for leave to appeal to this Court, challenging the trial court's orders granting plaintiff relief regarding alleged spoliation of evidence by NSS, but denying NSS relief regarding plaintiff's alleged spoliation of evidence. NSS also sought leave to appeal the trial court's order denying NSS's motion for summary disposition. This Court granted leave to appeal in all three cases and consolidated the appeals.

## II. DISCUSSION

## A. SPOLIATION OF EVIDENCE

Defendant NSS contends that the trial court abused its discretion by granting plaintiff's motion asserting that NSS engaged in spoliation of evidence and sanctioning NSS, and by conversely denying NSS's motion asserting that plaintiff engaged in spoliation of evidence. We agree that the trial court abused its discretion by sanctioning NSS for spoliation.

We review for an abuse of discretion the trial court's decision to sanction a party for spoliation of evidence. *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018). An abuse of discretion occurs when the trial court's decision results in an outcome outside the range of principled outcomes. *Id*.

A party has a duty to preserve evidence material to litigation that is pending or that is reasonably foreseeable. *Brenner v Kolk*, 226 Mich App 149, 162; 573 NW2d 65 (1997). "Even when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." *Id*. When a party fails to preserve evidence material to pending or reasonably foreseeable litigation, the party is said to have "spoliated" the evidence, and the trial court is permitted to draw an adverse inference against that party if (1) the evidence was under the control of the party and could have been produced, (2) the party lacks an excuse for failing to produce the evidence, and (3) the evidence is material, non-cumulative, and not equally available to the other party. *Ward v Consol Rail Corp*, 472 Mich 77, 85-86; 693 NW2d 366 (2005); see also *Teel v Meredith*, 284 Mich App 660, 666-667; 774 NW2d 527 (2009). Even when a party has destroyed or failed to preserve evidence, however, the party nonetheless may rebut an adverse inference by presenting a "nonfraudulent explanation" for its decision to discard evidence. *Ward*, 472 Mich at 85. "[N]o adverse inference arises if [the party] has a reasonable explanation for its failure to produce the missing evidence." *Id*. at 86.

When evidence has been lost or destroyed by a party, "a court must be able to make such rulings as necessary to promote fairness and justice." *Brenner*, 226 Mich at 160. When a party fails to preserve evidence, either negligently or deliberately, that the party knows or should know is relevant to potential litigation, and the other party is thereby unfairly prejudiced by the inability to examine the evidence, the trial court has authority to sanction the party who failed to preserve the evidence. *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 211-212; 659 NW2d 684 (2002). A jury instruction regarding spoliation is warranted "if the evidence that is the subject of the instruction is (1) material, (2) not merely cumulative, and (3) not equally available to the opposite party." *Komendat v Gifford*, 334 Mich App 138, 150; 964 NW2d 75 (2020) (quotation marks and citation omitted). In addition, an adverse inference sanction allows the factfinder to infer that the evidence would have been adverse to the party who failed to preserve the evidence; the inference is permissive, not mandatory. See *Brenner*, 226 Mich App 155-156.

## 1. MATERIALITY

NSS first contends that its failure to preserve the dump truck, the dump truck's service records, and Neal's employment records did not result in spoliation because the evidence was not material to plaintiff's lawsuit. We agree.

A party's duty to preserve evidence for pending or reasonably foreseeable litigation is limited to evidence that is material to that litigation. See *Komendat*, 334 Mich App at 150. Although the terms relevance and materiality sometimes are used interchangeably, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevance has two components, which are materiality and probative value. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 667; 819 NW2d 28 (2011). To be relevant, the evidence must be material and also probative, tending to make the existence of a material fact more probable or less probable than it would be without the evidence. MRE 401; *Hardrick*, 294 Mich App at 668.

Materiality is the requirement that the evidence be related to "any fact that is of consequence to the determination of the action," or in other words, "is the fact to be proven truly in issue?" *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." *Hardrick*, 294 Mich at 667 (quotation marks and citations omitted). "Materiality 'looks to the relation between the propositions that the evidence is offered to prove and the issues in the case. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial.' " *Id.*, quoting 1 McCormick, Evidence (6th ed), § 185, p 729. Cases discussing spoliation sometimes use the terms relevance and materiality interchangeably, see *Bloemendaal*, 255 Mich App at 211, but a requirement of spoliation is materiality, not relevance. See M Civ JI 60.1; see also *Komendat*, 334 Mich App at 150-151 (Citing M Civ JI 60.1, and determining that a spoliation instruction may be warranted if the evidence in question is material).

In this case, the evidence that plaintiff contends was spoliated by NSS is not material to the litigation because it does not help to prove a proposition that is a matter in issue. In its motion, plaintiff alleged that NSS destroyed certain records it had the duty to preserve, namely:

a. The vehicle maintenance file for the dump truck;

b. The accident register for the dump truck;

c. Pre-trip inspections for the dump truck;

d. Documents showing inspections of the dump truck prior to the collision;

e. Any inspection reports for the dump truck;

f. Any bills or records in any way related to the dump truck;

g. Documentation of safety meetings held by N.S.S.;

h. Safety director records;

i. Driver vehicle inspection reports;

j. Driver qualification file;

k. The Driver's file for NSS employee, Defendant Scott Neal;

l. Defendant Scott Neal's certified driving record from 2019;

m. Driver logs for Defendant Scott Neal;

n. Preemployment drug and alcohol testing documents for Defendant Scott Neal;

o. Post-accident drug and alcohol screen for Defendant Scott Neal;

p. Acknowledgments of receipts for misuse of alcohol/use of controlled substance policy signed by Defendant Scott Neal;

q. Annual inquiry and review of Defendant Scott Neal's driving record;

r. Driver investigation history file for Defendant Scott Neal;

s. Defendant Scott Neal's abstract driving record from the time of his hiring; and

t. "all of the paperwork that was pertinent to this."

Plaintiff's motion asserted that these documents were important because they were evidence of NSS's compliance, or lack thereof, with the Federal Motor Carrier Safety Regulations, and NSS's efforts, or lack thereof, to put a safe vehicle with a safe driver on the roadway. Plaintiff argued that the evidence would likely help plaintiff prove that NSS knew the dump truck was defective and also prove that NSS was negligent in hiring Neal to drive the dump truck. Plaintiff also asserted that NSS was a defendant in an unrelated labor dispute and therefore was obligated to keep its records for that dispute.

NSS responded in part that defendant failed to state the relevance of these documents. NSS asserted that neither Neal nor NSS was cited for the accident; there was no finding by the authorities investigating the accident that any issue related to the dump truck caused the accident, nor any finding that Neal in any way caused the accident. Further, some documentation related to the dump truck was in the truck when it was seized by police; those documents were not destroyed by NSS, and plaintiff obtained Neal's medical cards, employment history, and driving record from other sources.

At the hearing on the motion, the trial court took the plaintiff's spoliation motion under advisement, and ordered that NSS had 30 days to provide plaintiff with the documents related to the dump truck and Neal's employment as outlined in plaintiff's motion, and also the dump truck. Although NSS located the dump truck and three people who had serviced the dump truck, the trial court held that NSS had not complied with its order; the trial court stated at a later hearing that NSS was obligated to keep its records because of the unrelated pending union dispute. The trial court did not address the issue of materiality of the evidence sought, but imposed sanctions reasoning in pertinent part:

> [Schubeck] indicated that he destroyed these records and there [sic] doesn't say anything about, you know, intention or whatever, but the fact of the matter remains is that he destroyed the records and, in order to promote fairness and justice, the Court does have to fashion a remedy here. This evidence has been destroyed, as has been indicated. The truck is now somewhere on the East Coast and it's been two years. So, that doesn't provide the expert with an opportunity to adequately inspect it because, you know, as is indicated, the state police said that their – the brakes didn't work and the – the turn signals didn't work and, of course if it's in operation on the East Coast somewhere, I'm sure those matters have been rectified at this point in time. So, you know – and, like I said, unfortunately, this named defendant just really is not acting in good faith in any stretch of imagination.

And that being said, the Court could, could, as Mr. Marko indicated, default the – the defendant but the Court's isn't going to give that harsh remedy. What the Court will do is the Court will strike the affirmative defenses, prevent the defendant from presenting any evidence saying that they properly maintained the vehicle or that they did whatever else they were to do to properly maintain the vehicle. And the Court will utilize, if we get to trial, the jury instruction 6.01 and the Court will issue costs in the amount of $3,500, against the defendant. N – where is it? N – NSS and – what is it? I keep forgetting his name, Mr. Marko.

The trial court thereafter entered its order stating:

> IT IS HEREBY ORDERED that, Defendant having previously been ordered to produce certain documents and things no later than January 22, 2021, and Defendant having failed to comply with this Court's Order, this Court finds that Plaintiff is entitled to the following remedies to promote fairness and justice in this case in accordance with the applicable case law and Brenner v Kolk, 226 Mich App 149, 162 (1997).
>
> A. The Court shall give Model Civil Jury Instruction 6.01(a) to the jury in this matter;
>
> B. Defendant's Affirmative Defenses are hereby stricken and may not be refiled or relied upon at trial;
>
> C. Defendant is barred from introducing any mitigating evidence regarding their business practices, employment practices, vehicle maintenance practices, safety practices, or otherwise; and
>
> D. Defendant is to pay monetary costs in the amount of $3,500.00 to [plaintiff].

By failing to consider on the record whether the evidence requested was material before finding that NSS spoliated evidence and imposing sanctions, the trial court abused its discretion. As discussed, a party's duty to preserve evidence for pending or reasonably foreseeable litigation is limited to evidence that is material to that litigation. See *Komendat*, 334 Mich App at 150; see also *Brenner*, 226 Mich App at 162. The trial court therefore was obligated to determine whether the items requested were material before sanctioning NSS for failing to preserve the items.

A review of the items requested in the context of the facts of this case establishes that the items requested were not evidence material to the litigation. Plaintiff's complaint alleged against NSS negligence, gross negligence, willful and wanton misconduct, wrongful death, owner liability under MCL 257.401, and vicarious liability. The evidence that plaintiff claimed NSS spoliated can be grouped into two categories: records related to the maintenance of the dump truck and records related to Neal's driving record, including Neal's history of drug and alcohol use. The trial court also included the dump truck itself.

Neal's driving record and history of substance use would be material only if there were a question whether the collision had been caused by the driver's operation of the dump truck. Here, there is no indication that the collision was caused by Neal's driving; Neal's description of the collision is that McDuffie-Connor was driving in a parking lane and attempted to pass the dump truck on the right at the same moment that Neal turned the dump truck to the right after activating the truck's turn signal. Pace confirmed Neal's description of the collision, including Neal's assertion that he activated the dump truck's right turn signal before turning and that the turn signal was blinking. Neal's description of the collision is also consistent with the video, which does not demonstrate any traffic violation by Neal. The police report confirmed that Neal's description of the collision was consistent with the video and with the officers' inspection of the crash site. There also is no indication that substance use by Neal played a role in the collision; Neal's alcohol and substance tests administered after the accident were negative. In sum, plaintiff seeks evidence to prove that Neal has a history of substance abuse and/or a history of driving infractions, explaining that it wishes to demonstrate that NSS put an unsafe driver on the road. Those matters are not at issue in this case, however, because Neal did not commit any infraction or otherwise cause the collision. Because evidence offered to prove a proposition that is not a matter in issue is not material, *Hardrick*, 294 Mich at 667, NSS had no obligation to preserve evidence relating to Neal's driving record or substance abuse history.

Plaintiff also sought evidence related to the service records and safety inspection records for the dump truck. That evidence would be material only if there were a question whether the collision had been caused by the dump truck malfunctioning. Here, there is no evidence that the dump truck malfunctioned. Neither Neal nor NSS was cited for the collision and the video does not indicate that the dump truck malfunctioned. Rather, the video confirms that McDuffie-Connor moved alongside the dump truck in the parking lane and as a result, was in the path of the dump truck as the truck began to turn right.

Plaintiff suggests that there is a question whether the dump truck's brakes and right turn signal were operating properly at the time of the collision because the post-accident inspection of the dump truck by police stated that the dump truck's brakes were not properly adjusted and the turn signals were lighting but not blinking. There is no indication that the collision was caused by a failure of the dump truck to brake, however, so whether the dump truck's brakes were operating properly is immaterial.

Similarly, plaintiff seeks evidence that the turn signals of the dump truck were not working at the time of the collision. Whether a vehicle's turn signal was operating could be both material and relevant in a given case, especially where, as here, the collision occurred while one vehicle was in the process of turning. A driver has a statutory duty while operating a vehicle to determine before making a turn whether the turn can be made safely, and to use a turn signal. MCL 257.648. Violation of a statutorily-imposed duty constitutes negligence per se, and establishes the duty and breach elements of negligence. *Meyers v Rieck*, 509 Mich 460, 472; 983 NW2d 747 (2022). In this case, however, there is no evidence that the collision was caused by a failure of the dump truck's turn signal. Neal testified that he inspected the dump truck in the morning before the accident occurred and the turn signal was working properly. He further testified that he used the turn signal before turning, and Pace confirmed that while traveling behind the dump truck he could see the dump truck's right turn signal blinking. Pace further opined that the blinking turn signal would have been visible to the driver of the Sebring when the Sebring was traveling alongside

-10-

Pace's car. There is therefore evidence that the turn signal was working properly and no evidence that the collision was caused by a failure of the dump truck's turn signal. Plaintiff's theory appears to be "what if the turn signal was not working at the time of the collision?" With no support for that theory, however, it is speculation only.

The trial court also concluded that NSS's failure to preserve the dump truck itself was spoliation. Again, there is no evidence supporting the speculation that the condition of the dump truck caused or contributed to the collision. In addition, plaintiff had access to the police report that included an inspection of the dump truck, but failed to inspect the dump truck even though the dump truck remained in the Detroit area until February 13, 2020, and was available for inspection by plaintiff.

We conclude that the trial court abused its discretion by determining that NSS spoliated both the documents requested and the dump truck. The trial court did not evaluate on the record the materiality of the evidence requested and the record does not support a finding of materiality. When lost or destroyed evidence is immaterial, sanctioning the party at fault is inappropriate. See *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 194; 600 NW2d 129 (1999).

## 2. FORESEEABILITY

As discussed, a party has a duty to preserve evidence material to litigation that is pending or that is reasonably foreseeable. *Brenner*, 226 Mich App at 162. In this case, the collision occurred on July 17, 2019, and the dump truck was impounded by police on that date. NSS did not retrieve the dump truck, and the dump truck was later sold. According to the owner of NSS, he closed the business in December 2019 and disposed of most of NSS's business records at that time by putting them in a dumpster. Plaintiff filed its complaint on June 15, 2020. The litigation thus was not pending at the time NSS disposed of the records and did not preserve the dump truck.

Plaintiff argues that the litigation was foreseeable because the collision resulted in the death of McDuffie-Connor. However, apart from the seriousness of the consequences of the collision in this case, there is nothing about the collision that would suggest that any tort occurred for which NSS would be facing liability. Neal was not cited by police for any violation, and there is no indication that Neal violated any traffic law or otherwise caused the collision. Rather, the collision occurred as the result of an apparent split-second decision by McDuffie-Connor to accelerate and pass the dump truck on the right while traveling in a parking lane contrary to law. In addition, contrary to the trial court's finding that NSS's involvement in an unrelated labor dispute was a basis for NSS to retain its business records, that consideration is not relevant to the question of foreseeability in this case. Even if the litigation were foreseeable, NSS's obligation was limited to preserving material evidence. As discussed, the evidence sought by plaintiff was not material to the litigation because the evidence sought did not relate to any fact in issue.

## 3. DISPROPORTIONATE SANCTIONS

We also find that the sanctions imposed were disproportionate. When a party fails to preserve evidence, either negligently or deliberately, that the party knows or should know is relevant to potential litigation, and the other party is thereby unfairly prejudiced by the inability to examine the evidence, the trial court has authority to sanction the party who failed to preserve the

evidence. *Bloemendaal*, 255 Mich App at 211-212. The trial court properly exercises its discretion when it "carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Id*. at 212. An appropriate sanction may be "the exclusion of evidence that unfairly prejudices the other party." *Brenner*, 226 Mich App at 161. A jury instruction regarding spoliation is warranted "if the evidence that is the subject of the instruction is (1) material, (2) not merely cumulative, and (3) not equally available to the opposite party." *Komendat*, 334 Mich App at 150 (quotation marks and citation omitted).

In this case the evidence requested was not material, and the trial court did not find materiality. In addition, the trial court did not explain why plaintiff was unfairly prejudiced by NSS's failure to preserve the requested evidence. Because the trial court did not consider materiality, the trial court concluded without basis that it was necessary for plaintiff to inspect the truck's post-collision condition, despite the fact that (1) there is no suggestion that the accident was the result of a mechanical failure of the truck, (2) the police inspected the truck post-collision and plaintiff has access to the police inspection report, (3) the truck was available for inspection for several months after the collision and plaintiff did not inspect the truck, and (4) the truck still existed and could be inspected, and the names of the truck's service providers had been identified. Because materiality was not considered and prejudice was not established, sanctions were not appropriate.

In addition, the sanctions were excessive. The sanctions imposed were (1) the jury would be given Model Civil Jury Instruction 6.01(a) regarding spoliation, (2) NSS's affirmative defenses were stricken and could not be relied upon at trial, (3) NSS was barred from introducing any mitigating evidence regarding their business practices, employment practices, vehicle maintenance practices, and safety practices, and (4) NSS was ordered to pay costs of $3,500.00 to plaintiff. A trial court properly exercises its discretion when it "carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Bloemendaal*, 255 Mich App at 212. In this case, the trial court's sanctions interfered with NSS's ability to assert affirmative defenses or present mitigating evidence, which was out of proportion to NSS's alleged misconduct. The trial court's sanctions would have effectively put an end to the lawsuit in plaintiff's favor. The trial court therefore abused its discretion by failing to carefully fashion an appropriate sanction.

## 4. PLAINTIFF'S SPOLIATION

NSS also contends that the trial court abused its discretion by ruling that plaintiff did not spoliate evidence by failing to preserve the Sebring for litigation. We conclude that for the same reasons that the condition of the dump truck is not material, the condition of the Sebring also is not material. There are no facts that suggest that the collision occurred because of mechanical failure of either vehicle, and thus the mechanical condition of the vehicles is not material and failure to preserve either vehicle should not be deemed spoliation. If, however, the speculation of possible mechanical failure of the dump truck is deemed sufficient to establish materiality and the failure of NSS to preserve the dump truck is spoliation, then the possible mechanical failure of the Sebring also is material and plaintiff's failure to preserve the Sebring similarly is spoliation. If mere speculation is sufficient to establish materiality, one could speculate that the Sebring may have experienced brake failure or that the condition of the Sebring was such that it caused the car

-12-

to flip on impact, resulting in the decedent's death. Further, whereas the question whether the litigation was foreseeable to NSS is debatable, plaintiff knew whether litigation would be initiated and Chandra McDuffie prepared for litigation by photographing the Sebring at the impound lot. In addition, plaintiff asserted that the production of the dump truck for inspection was vital and therefore should have anticipated that production of the Sebring for inspection also would be material.

## B. SUMMARY DISPOSITION

## 1. BREACH OF DUTY

NSS contends that the trial court erred by denying its motion for summary disposition because there is no genuine issue of material fact whether the collision resulted from a breach of any duty owed by NSS to the decedent. We agree.

We review de novo the trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). We also review de novo the interpretation of statutes and legal doctrines. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a grant or denial of summary disposition under MCR 2.116(C)(8), this Court considers the motion based upon the pleadings alone and accepts all factual allegations as true. *Id*. Summary disposition under MCR 2.116(C)(8) is warranted when the claim is so unenforceable that no factual development could justify recovery. *Id*. at 160.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id*. When reviewing a motion for summary disposition granted under MCR 2.116(C)(10), this Court considers the documentary evidence submitted by the parties in the light most favorable to the nonmoving party, *id*., and will find that a genuine issue of material fact exists if "the record leaves open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citations omitted). The moving party has the initial burden to support its motion with documentary evidence, but once met, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005).

Plaintiff's complaint alleges against NSS negligence, gross negligence, willful and wanton misconduct, wrongful death, owner liability under MCL 257.401, and vicarious liability for Neal's actions. To establish negligence, the plaintiff must demonstrate duty, breach, causation, and damages. *Hannay v Dep't of Transp*, 497 Mich 45, 63; 860 NW2d 67 (2014). The plaintiff must establish both factual causation, i.e., that the defendant's conduct caused harm to the plaintiff, and legal causation, i.e., that the harm caused to the plaintiff was the kind of harm that the defendant risked. *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017).

With respect to the claim of wrongful death, under MCL 600.2921 an action for injury that results in death may be brought by the personal representative of the decedent's estate under the wrongful death statute, MCL 600.2922, which provides:

> Whenever the death of a person, injuries resulting in death, or death as described in [MCL 600.2922a] shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in [MCL 600.2922a], and although the death was caused under circumstances that constitute a felony. [MCL 600.2922(1).]

The elements of wrongful death thus are (1) a death, (2) caused by the wrongful act, neglect, or fault of another, (3) that had the death not occurred a cause of action could have been filed against the responsible party and damages recovered. The cause of action is not created upon the death of the decedent, but rather survives the death of the decedent, and the touchstone of that cause of action is whether the decedent could have maintained the action if death had not occurred. *Zehel v Nugent*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357511); slip op at 3, citing *Wesche v Mecosta Co Road Comm*, 480 Mich 75, 88-89; 746 NW2d 847 (2008).

The question is whether NSS or Neal, its employee, breached a duty owed to the decedent or caused the death of the decedent by wrongful act, neglect, or fault. A driver has a statutory duty while operating a vehicle to determine before making a turn whether the turn can be made safely, including the use of a signal. MCL 257.648. Violation of a statutorily imposed duty constitutes negligence per se and establishes the elements of duty and breach in a claim for negligence. *Meyers*, 509 Mich at 472. Apart from any statutory duty, a driver owes a duty to other motorists and pedestrians to act with ordinary and reasonable care and caution when operating a vehicle, being that which an ordinarily careful and prudent person would use under the circumstances, *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956), making reasonable allowances for traffic, weather, and road conditions. *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967). A driver is not obligated, however, "to guard against every conceivable result, to take extravagant precautions, [or] to exercise undue care." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). Rather, a driver is "entitled to assume that others using the highway in question would under the circumstances at the time use reasonable care themselves and take proper steps to avoid the risk of injury. *Id*. In addition, the fact that an accident occurred does not give rise to a presumption of negligence on the part of the driver. *Edgerton v Lynch*, 255 Mich 456, 460; 238 NW 322 (1931). Whether a driver met the standard of reasonable prudence generally is a question for the jury. *Marietta v Cliff's Ridge, Inc*, 385 Mich 364, 370; 189 NW2d 208 (1971).

In this case, plaintiff failed to present facts to establish that NSS or Neal breached a duty owed to the decedent. Plaintiff's complaint alleges that Neal, and thereby NSS, breached a duty by failing to keep the dump truck under control; failing to observe the Sebring and avoid the collision; operating the dump truck carelessly and without due care, thereby causing the collision; operating the dump truck at an excessive speed and failing to bring the truck to a stop within the assured clear distance ahead; and operating the vehicle recklessly, disregarding other users and failing to yield. The complaint also alleges that NSS breached its duty to the decedent by failing

-14-

to properly hire, train, instruct, supervise, and control Neal, and failing to properly maintain the dump truck.

Plaintiff's complaint, however, alleges no facts to establish that either Neal or NSS breached a duty to the decedent as described in the complaint. For example, plaintiff does not allege facts to establish that Neal failed to control the dump truck, operated the dump truck carelessly or at excessive speed, failed to stop the truck within the assured clear distance ahead, or failed to yield, nor does plaintiff allege facts that any such failure caused the collision. The facts indicate that while turning right from the appropriate lane, the dump truck was struck by the Sebring traveling in the parking lane contrary to law. Neal testified that he did not see the Sebring before the collision, but given that the Sebring was traveling in the parking lane and, according to Pace, accelerated just before the dump truck began to turn, the facts do not establish a failure by Neal to use due care.[2]

The only fact alleged suggesting a breach of duty is plaintiff's allegation that the dump truck's right turn signal did not function properly, thereby causing the accident. The only support for this assertion is a *post*-collision inspection by police that found that the dump truck's turn signals lighted but did not blink; there was no evidence, however, that the turn signals were not properly functioning before the collision, which caused significant damage to the truck. Neal testified that before driving the dump truck that day he conducted a pre-trip inspection of the truck and the turn signals were operating properly. He further testified that before turning, he activated the right turn signal. Pace, traveling immediately behind the dump truck, testified that he saw the dump truck's right turn signal blinking before the dump truck began its turn. Pace opined that based upon the location of the Sebring, the turn signal would have been visible to the driver of the Sebring. Any allegation that the turn signal was not functioning before the collision is entirely speculative. In sum, there is no evidence that Neal did not signal his turn or otherwise fail to operate the dump truck with ordinary and reasonable care and caution, and no evidence that the truck's turn signal was not operating properly before the collision, or that a malfunction of the truck's brakes contributed in some way to the collision. Because plaintiff alleged no facts that would establish a breach of duty by either Neal or NSS, or any wrongful act by Neal that caused the collision, plaintiff's complaint fails to state a claim of negligence or wrongful death.

Plaintiff also asserts that NSS is liable under MCL 257.401, which provides that the owner of a motor vehicle is liable for injury caused by the negligent operation of the vehicle if the vehicle was being driven with the owner's consent. See *Cooke v Ford Motor Co*, 333 Mich App 545, 555; 963 NW2d 405 (2020). Plaintiff also alleges that NSS is vicariously liable for the negligence of its employee, Neal. Generally, an employer is vicariously liable for the wrongful acts of his or her employee committed while performing a duty within the scope of the employment. *Rogers v J.B. Hunt Transport, Inc*, 466 Mich 645, 651; 649 NW2d 23 (2002).

---

[2] There is at least a reasonable possibility that the Sebring, a convertible sedan being operated with its top down at the time of the collision, was in Neal's "blind spot" just before and at the time of the impact with the dump truck.

-15-

In this case, there is no evidence that the decedent's death was caused by the wrongful act, neglect, or fault of another, specifically Neal. Similarly, there is no evidence that Neal breached any duty owed as a driver to McDuffie-Connor by failing to operate the dump truck with ordinary caution or care. Although circumstantial evidence may be sufficient to create a genuine issue of material fact, mere conjecture or speculation is not sufficient. *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). The trial court therefore erred by denying NSS's motion for summary disposition of plaintiff's complaint.

The trial court's August 4, 2021 order granting plaintiff's motion for relief regarding NSS's alleged spoliation of evidence and imposing sanctions against NSS is vacated, the trial court's October 1, 2021 order denying NSS's motion regarding plaintiff's alleged spoliation of the Sebring is affirmed, the trial court's February 23, 2022 order denying NSS's motion for summary disposition is vacated, and the we remand this matter to the trial court for entry of summary disposition in favor of NSS.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello

-16-